UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| GENERAL MOTORS LLC,<br>GENERAL MOTORS COMPANY,<br><br>　　　　　　　　Plaintiffs,<br>　against<br><br>FCA US LLC, FIAT CHRYSLER<br>AUTOMOBILES N.V., ALPHONS<br>IACOBELLI, JEROME DURDEN,<br>MICHAEL BROWN,<br><br>　　　　　　　　Defendants. | No. 19-cv-13429<br><br>Honorable Paul D. Borman<br>District Court Judge<br><br>Honorable David R. Grand<br>Magistrate Judge |

**PLAINTIFFS' OPPOSITION TO FIAT CHRYSLER
AUTOMOBILES N.V.'S MOTION TO DISMISS THE COMPLAINT**

　　Plaintiffs General Motors LLC and General Motors Company (collectively, "GM") submit this Opposition in Response to Fiat Chrysler Automobiles N.V.'s ("FCA NV") Motion to Dismiss the Complaint (Dkt. 42).

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES PRESENTED ............................................................... iv

STATEMENT OF CONTROLLING OR MOST APPROPRIATE
     AUTHORITIES ............................................................................................ v

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND AND ARGUMENT .................................................... 3

I.    FCA NV Failed to Submit Any Evidence Contradicting GM's
      Jurisdictional Allegations, Which Must be Taken as True. .......................... 3

II.   GM Has Alleged Specific Personal Jurisdiction Over FCA NV. .................. 4

      A.    FCA NV Targeted Michigan and Caused Consequences Here. ........... 5

      B.    GM's Claims "Arise from" FCA NV's Michigan Contacts. ................ 8

      C.    It Would Not be Unreasonable to Exercise Personal Jurisdiction
           Over FCA NV. ....................................................................................... 9

III.  FCA NV's Rule 12(b)(6) Arguments Fail. ..................................................... 9

CONCLUSION ........................................................................................................... 10

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*,
   503 F.3d 544 (6th Cir. 2007) ........................................................................... 5, 8, 9

*In re Auto. Parts Antitrust Litig.*,
   No. 12-md-02311, 2015 WL 13722903 (E.D. Mich. Sept. 29,
   2015) ........................................................................................................................ 3

*Beydoun v. Wataniya Rests. Holding, Q.S.C.*,
   768 F.3d 499 (6th Cir. 2014) ................................................................................ 3

*Bird v. Parsons*,
   289 F.3d 865 (6th Cir. 2002) ................................................................ 2, 5, 8, 9

*Carrier Corp. v. Outokumpu Oyj*,
   673 F.3d 430 (6th Cir. 2012) ................................................................................ 6

*Chirila v. Conforte*,
   47 Fed. App'x. 838 (9th Cir. 2002) .................................................................... 8

*Cunningham v. Sunshine Consulting Grp., LLC*,
   No. 3:16-2921, 2018 WL 3496538 (M.D. Tenn. July 20, 2018) .................. 3

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ................................................................................................ 7

*Devnani v. DKM Solutions, Inc.*,
   No. 17-cv-10810, 2017 WL 4682273 (E.D. Mich. Oct. 18, 2017)
   (Borman, J.) ............................................................................................................. 5

*Ford Motor Co. v. Great Domains, Inc.*,
   141 F. Supp. 2d 763 (E.D. Mich. 2001) ............................................................. 4

*Hicks v. Clay Cty.*,
   636 F. Supp. 2d 903 (W.D. Mo. 2008) .............................................................. 4

*Smith v. Home Depot USA, Inc.*,
   294 Fed. App'x. 186 (6th Cir. 2008) ................................................................. 8

*Theunissen v. Matthews*,
    935 F.2d 1454 (6th Cir. 1991) ...............................................................................4

*United States v. Bestfoods*,
    524 U.S. 51 (1998)..................................................................................2, 7, 10

**Rules**

Rule 12(b)(2)........................................................................................................5

Rule 12(b)(6).................................................................................................2, 10

iv

## **STATEMENT OF ISSUES PRESENTED**

1. Do the factual allegations in GM's Complaint, which must be taken as true, support the Court's exercise of personal jurisdiction over FCA NV?

GM's Answer: Yes.

Case 2:19-cv-13429-PDB-DRG   ECF No. 59   filed 03/09/20   PageID.2164   Page 6 of 17

# STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**I.     GM's Jurisdictional Allegations Must Be Taken As True.**

1. *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499 (6th Cir. 2014)

2. *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2015 WL 13722903 (E.D. Mich. Sept. 29, 2015)

**II.    FCA NV Targeted Michigan and Intended Consequences Here.**

3. *Daimler AG v. Bauman*, 571 U.S. 117 (2014)

4. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012)

**III.   GM's Claims Arise from FCA NV's Michigan Contacts.**

5. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2007)

6. *Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002)

# INTRODUCTION[1]

GM carried its burden of establishing specific personal jurisdiction by alleging facts demonstrating that FCA NV purposefully targeted Michigan when engaging in the conduct alleged in GM's Complaint (Dkt No. 1), primarily through its former CEO Sergio Marchionne. These factual allegations demonstrate that Defendants' scheme was designed, orchestrated, and implemented through bribes paid in Michigan for the express purpose of obtaining labor advantages in Michigan (and throughout the nation) to directly harm GM with higher costs and eventually in an attempt to engineer a merger with GM, a Michigan-based corporation. (Compl. ¶¶ 42, 174(a).) As part of this admitted scheme, Marchionne "instructed high-ranking FCA executives, including Iacobelli, to make more than $1.5 million" in prohibited payments to UAW leaders in Michigan, and he personally gave an expensive custom-made watch to General Holiefield, former UAW Vice President, who lived and worked in Michigan. (*Id.* ¶¶ 5, 58, 63, 100, 174(a).) GM's allegations establish that all the foregoing was done to harm GM, to competitively advantage FCA, and ultimately attempt to achieve the merger that FCA NV proposed to GM on multiple occasions through its Chairman, John Elkann, and CEO, Marchionne. (*Id.* ¶¶ 5, 7, 86, 99, 101.) As a result of FCA NV's scheme, GM was directly

---

[1] Unless otherwise noted, all emphasis has been added, and all citations, alterations, and internal quotation marks have been omitted. References to "Br." are to the memorandum in support of FCA NV's motion to dismiss (Dkt. No. 42).

1

damaged through the denial of labor advantages and billions of dollars in "higher [labor] costs" and other damages, all of which GM sustained in Michigan. (*Id.* ¶¶ 4, 7, 71, 134.)

These Michigan contacts establish specific personal jurisdiction, and none of FCA NV's arguments to the contrary have merit. FCA NV, which failed to submit any evidence in support of its motion, contends Marchionne's conduct cannot be imputed to FCA NV under *United States v. Bestfoods*, 524 U.S. 51 (1998). (Br. at 8-9.) That presumption, however, applies only when an officer is "acting for the subsidiary," 524 U.S. at 69; here, GM alleges facts demonstrating that at crucial points, Marchionne was clearly acting on behalf of FCA NV, the parent. (Compl. ¶¶ 174(a), 101.) And given these allegations of Marchionne's active, first-hand involvement, FCA NV's assertion that it only had passive "knowledge" of this scheme (Br. at 7) is unavailing.

Likewise, GM's claims clearly "arise from" these Michigan contacts—a "lenient standard" that only requires a showing that the contacts are "marginally related" to the claims. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). GM's RICO and unfair competition claims are based on a bribery scheme that the Complaint alleges Marchionne directed and authorized on behalf of FCA NV. And FCA NV's contention that GM's claims should be dismissed under Rule 12(b)(6), is

without merit because GM repeatedly and specifically alleges Marchionne acted on FCA NV's behalf in orchestrating the scheme. (Compl. ¶¶ 174(a), 101.)

## FACTUAL BACKGROUND AND ARGUMENT

### I. FCA NV Failed to Submit Any Evidence Contradicting GM's Jurisdictional Allegations, Which Must be Taken as True.

FCA NV failed to support its motion with any evidence. It argues nonetheless that GM "may not stand on [its] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." (Br. at 4.) That is exactly backwards. When a party challenges jurisdiction but does not "support [its motion] by attaching affidavits," "no evidence contradicting [plaintiff's] allegations supporting jurisdiction is before the Court," and "consequently, [plaintiff] ha[s] no obligation to respond with affidavits" and "may rest on [its] pleadings." *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2015 WL 13722903, at *2 (E.D. Mich. Sept. 29, 2015). Also, a court addressing such motion "must consider the pleadings . . . in a light most favorable to the non-moving party"—that is, GM. *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014).

Because FCA NV has submitted no evidence, any factual dispute it purports to raise—*e.g.*, whether FCA NV "sells vehicles in Michigan," or whether FCA NV was "acting through its agent Marchionne" (Br. at 8-9)—must be disregarded as a matter of law. *See, e.g.*, *Cunningham v. Sunshine Consulting Grp., LLC*, No. 3:16-2921, 2018 WL 3496538, at *3 (M.D. Tenn. July 20, 2018) (without a "supporting

3

affidavit," "the numerous factual assertions contained" in defendant's motion to dismiss for lack of jurisdiction "cannot be relied upon as an evidentiary basis" for the motion); *Hicks v. Clay Cty.*, 636 F. Supp. 2d 903, 907 (W.D. Mo. 2008) ("Where, as here, the moving party has filed no affidavits controverting the relevant [jurisdictional] allegations," the "Court *must* take the allegations of the complaint as true.").[2]

## II. GM Has Alleged Specific Personal Jurisdiction Over FCA NV.

Specific personal jurisdiction is proper when a defendant's contacts with the forum state satisfy a three-part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Bird*, 289 F.3d at 874.[3] When, as here, the Court is presented with only written submissions in connection with a Rule 12(b)(2) motion, "the burden on the plaintiff"

---

[2] GM believes its allegations establish personal jurisdiction over FCA NV. If, however, the Court has any doubt regarding its exercise of jurisdiction, GM requests leave of Court to take limited jurisdictional discovery from FCA NV (both written and testimonial). *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (recognizing discovery is appropriate to aid in deciding a motion to dismiss based on jurisdiction); *Ford Motor Co. v. Great Domains, Inc.,* 141 F. Supp. 2d 763, 770 (E.D. Mich. 2001).

[3] Michigan's long-arm statute extends "to the limits imposed by federal constitutional due process requirements," so the long-arm statute and due process

4

to make a prima facie case establishing the Court's jurisdiction is "relatively slight." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). GM easily satisfies that burden for all three elements.

### A. FCA NV Targeted Michigan and Caused Consequences Here.

GM specifically pleads that FCA NV, through Marchionne, Elkann, and others, targeted Michigan by "engag[ing] in and authoriz[ing] a decade-long racketeering scheme occurring principally in Michigan, directed to harm GM." (Compl. ¶ 42.) While FCA NV weakly argues this allegation "lacks 'specific facts,'" (Br. at 7, citing paragraphs 42 and 64 only), a plain reading of the Complaint reflects specific factual allegations establishing FCA NV's orchestration—through its Chairman, Elkann and CEO, Marchionne—of the bribery scheme and its intended consequences in Michigan:

- "Marchionne, ***as the CEO of FCA NV*** . . . instructed high-ranking FCA executives, including Iacobelli, to make more than $1.5 million in prohibited payments" to UAW leaders, with the "ultimate goal" of engineering a merger "between GM and FCA NV" (Compl. ¶ 174(a));

- "Marchionne himself gave improper things of value to UAW leaders," including giving a custom watch to Holiefield in February 2010 (*id.*);

- By early 2015, Marchionne took "the lead" on a potential FCA NV-GM merger, "code-named 'Operation Cylinder'" (*id.* ¶ 100);

---

analysis "necessarily merge and become one." *Devnani v. DKM Solutions, Inc.*, No. 17-cv-10810, 2017 WL 4682273, at *5 (E.D. Mich. Oct. 18, 2017) (Borman, J.).

5

- On March 9, 2015, FCA NV's Chairman, John Elkann, and Marchionne sent a formal merger proposal to GM "on behalf of parent company *FCA NV*," not its U.S. subsidiary (*id.* ¶ 101);[4]

- In April 2015, Marchionne published a presentation titled "Confessions of a Capital Junkie," promising "nearly $5 billion in savings" from a merger between GM and FCA NV (*id.* ¶ 103); he then discussed it at length during FCA NV's earnings call, arguing that "the amount of potential savings . . . [poses] a very large opportunity that cannot go unexplored."[5]

FCA NV executed and/or directed all these acts in support of a RICO conspiracy directed at and with consequences in Michigan. This is a classic case of specific personal jurisdiction: a foreign defendant purposefully targeting the forum state and its citizens, knowing that the harm will occur there. *See, e.g.*, *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 451 (6th Cir. 2012) (finding specific personal jurisdiction over Finnish corporation that participated in antitrust "conspiracy" that had "an explicit geographical focus" and that allegedly "forc[ed] [the plaintiff] to pay higher prices in the United States," because "such conduct serves as a ***paradigmatic example*** of 'expressly aiming' tortious conduct").

FCA NV's contention that Marchionne's Michigan contacts should not be imputed to FCA NV is also incorrect. FCA NV argues that under *Bestfoods*, 524 U.S. 51, Marchionne should be presumed to have "act[ed] on behalf of the subsidiary" FCA US, not the parent FCA NV. (Br. at 8-9.) In doing so, however,

---

[4] *See* Ex. 1, a copy of which has been filed under seal pursuant to E.D. Mich. L.R. 5.3(b).

[5] *See* Exs. 2 and 3.

6

FCA NV omits that in *Bestfoods*, the Court stated that "courts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' ***when acting for the subsidiary***." 524 U.S. at 69.

Here, GM specifically alleges Marchionne was acting on behalf of FCA NV—the parent—at relevant times, including when he authorized Iacobelli and others to pay over $1.5 million in bribes, when he gave Holiefield an expensive watch, and when he implemented a bribery scheme as part of a merger strategy. (*Supra* at 5-6.) FCA NV has not controverted these allegations with any evidence. It is well settled that "a corporation can purposefully avail itself of a forum by directing its agents . . . to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). When FCA NV directed Marchionne to act in Michigan, it was purposefully availing itself of the state.

FCA NV mischaracterizes the Complaint as alleging only that FCA NV had "knowledge and approval" of the bribes and that "concerns a *passive* act, not an overt act directed at Michigan." (Br. at 7 (emphasis in original).) This contention ignores GM's express allegations that Marchionne personally directed and authorized these bribes, and personally led, with FCA NV's Chairman, the GM-FCA NV merger efforts. (*Supra* at 5-6.) Unlike the cases cited by FCA NV, where the plaintiffs failed to allege any conduct aimed at the forum state, *see Chirila v. Conforte*, 47 Fed. App'x. 838, 842 (9th Cir. 2002); *Smith v. Home Depot USA,*

7

*Inc.*, 294 Fed. App'x. 186, at *4 (6th Cir. 2008), GM expressly alleges that FCA NV directed its agents to conduct tortious activities in Michigan. These allegations, which the Court must accept as true at this stage, constitute the "targeting" required for specific personal jurisdiction.

### B.   GM's Claims "Arise from" FCA NV's Michigan Contacts.

GM's claims also "arise from" FCA NV's activities in the forum state, *see Bird*, 289 F.3d at 874, because "the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air Prods.*, 503 F.3d at 553. This is a "lenient standard," and "the cause of action need not 'formally' arise from defendant's contacts" (*id.*); it is enough if "the operative facts are at least **marginally** related" to the Michigan contacts. *Bird*, 289 F.3d at 875. The Complaint clears this bar with ease. GM's RICO and unfair competition claims are premised on allegations that FCA NV, through Marchionne, paid and authorized bribes to UAW workers in Michigan to impose higher costs and other damages on GM and ultimately force a merger with FCA NV. GM's claims are not only "marginally related" to these Michigan contacts; they arise directly from them.

FCA NV's sole response is that this case is only about bribes "facilitated by former FCA US employees." (Br. at 8.) But, as pled, the bribery scheme was not limited to just FCA US employees: the Complaint alleges Marchionne, "as the CEO of **FCA NV** . . . instructed high-ranking FCA executives" to make those bribes, and

8

even personally gave "a custom-made watch worth several thousand dollars to Holiefield" as part of the RICO scheme. (Compl. ¶ 174(a).)

### C. It Would Not be Unreasonable to Exercise Personal Jurisdiction Over FCA NV.

The third and final jurisdictional requirement is a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Bird*, 289 F.3d at 874. When "the first two criteri[a] are met, an inference of reasonableness arises and only the ***unusual case*** will not meet this third criteri[on]." *Air Prods.*, 503 F.3d at 554. FCA NV does not argue that exercising jurisdiction over it would be unreasonable, or even address the factors typically considered at the third stage. *Id*. This is not surprising, as this is not the "unusual" case where exercise of jurisdiction is unreasonable. Instead, GM's Complaint alleges facts demonstrating FCA NV directed a multi-year conspiracy to impose higher costs and other damages on GM through UAW bribes to effectuate a merger. In doing so, FCA NV subjected itself to personal jurisdiction in this Court.

### III. FCA NV's Rule 12(b)(6) Arguments Fail.

FCA NV also argues that the Court should dismiss the RICO and unfair competition claims against it under Rule 12(b)(6) because: (1) the Complaint only includes "general allegations against 'FCA Group,'" not "FCA NV" specifically; and (2) "GM does not allege that Mr. Marchionne authorized any particular payment" and it "has not rebutted the [*Bestfoods*] presumption." (Br. at 10-11.) But

9

as explained above, the Complaint specifically alleges that Marchionne (along with FCA NV's Chairman, Elkann) acted on FCA NV's behalf in numerous key parts of this scheme, which is both enough to make the *Bestfoods* presumption inapplicable (*supra* at 7) and to demonstrate FCA NV's specific involvement. Finally, GM **has** alleged that Marchionne authorized the bribes in question, (*see* Compl. ¶ 174(a)), and that FCA NV's Elkann specifically pursued the merger with GM. FCA NV cites no authorities that would require GM to plead anything more specific.

## CONCLUSION

GM respectfully requests that the Court deny FCA NV's motion to dismiss.

Dated: March 9, 2020                                Respectfully submitted,

**KIRKLAND AND ELLIS LLP**                  **HONIGMAN LLP**

By: */s/ Hariklia Karis, P.C.*                By: */s/ Jeffrey K. Lamb*
Hariklia Karis, P.C.                          Jeffrey K. Lamb (P76738)
Jeffrey L. Willian, P.C.                      2290 First National Building
300 North LaSalle                             660 Woodward Avenue
Chicago, IL 60654                             Detroit, MI 48226
Telephone: (312) 862-2000                     Telephone: (313) 465-7000
hariklia.karis@kirkland.com                   jlamb@honigman.com
jeffrey.willian@kirkland.com

*Attorneys for Plaintiffs General Motors LLC and General Motors Company*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on March 9, 2020.

                                                                           */s/ Jeffrey K. Lamb*
                                                                           Jeffrey K. Lamb