# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

GENERAL MOTORS LLC,
GENERAL MOTORS COMPANY,

      Plaintiffs,

  against

FCA US LLC, FIAT CHRYSLER
AUTOMOBILES N.V., ALPHONS
IACOBELLI, JEROME DURDEN,
MICHAEL BROWN,

      Defendants.

No. 19-cv-13429

Honorable Paul D. Borman
District Court Judge

Honorable David R. Grand
Magistrate Judge

## PLAINTIFFS' OPPOSITION TO ALPHONS IACOBELLI'S MOTION TO DISMISS THE COMPLAINT

Plaintiffs General Motors LLC and General Motors Company (collectively, "GM") submit this Opposition in Response to Alphons Iacobelli's Motion to Dismiss the Complaint (Dkt. 50).[1]

---

[1] Unless otherwise noted, all emphasis has been added, and all citations, alterations, and internal quotation marks have been omitted. References to "Br." and to "IBr." are to the memoranda in support of FCA's (Dkt. 41) and Iacobelli's (Dkt. 50) motions to dismiss, respectively. Defendants FCA US LLC and Fiat Chrysler Automobiles N.V. are referred to herein as "FCA" and "FCA NV," respectively.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................1

FACTUAL BACKGROUND ...................................................................3

ARGUMENT ..........................................................................................5

I.     GM Has Pled But-For Causation. ...................................................6

II.    GM Has Pled Proximate Cause. ......................................................7

III.   GM Has Pled a Cognizable RICO Injury. .....................................11

IV.    GM's RICO Claims Are Timely. ...................................................13

V.     GM Has Pled That Defendant Iacobelli Exercised Control Over the
       UAW. .............................................................................................17

VI.    29 U.S.C. § 186 Violations Are Not The Exclusive Jurisdiction Of
       The NLRB. ....................................................................................20

VII.   GM Has Pled Mail and Wire Fraud Predicate Offenses. ..............21

CONCLUSION .....................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advocacy Organization for Patients and Providers v.*
*Auto Club Insurance Association*,
176 F.3d 315 (6th Cir. 1999) ...............................................................19

*In re American Honda Motor Co., Dealerships Relations Litigation*,
941 F. Supp. 528 (D. Md. 1996) ...........................................................19

*Baisch v. Gallina*,
346 F.3d 366 (2d Cir. 2003) .................................................................13

*Bridge v. Phoenix Bond & Indemnity Co.*,
553 U.S. 639 (2008)..............................................................................ix

*Butchers' Union, Local No. 498, United Food & Commercial Workers*
*v. SDC Inv., Inc.*,
631 F. Supp. 1001 (E.D. Cal. 1986) .....................................................ix

*Carrier Corp. v. Outokumpu Oyj*,
673 F.3d 430 (6th Cir. 2012) .........................................................ix, 16

*In re ClassicStar Mare Lease Litig.*,
727 F.3d 473 (6th Cir. 2013) ..................................................... vi, ix, 7

*Continental 332 Fund, LLC v. Albertelli*,
317 F. Supp. 3d 1124 (M.D. Fla. 2018)................................................19

*Cox v. Adm'r U.S. Steel & Carnegie*,
17 F.3d 1386 (11th Cir. 1994) .........................................................9, 11

*D. Penguin Bros. v. City Nat. Bank*,
587 F. App'x 663 (2d Cir. 2014) ......................................................5, 18

*DeShetler v. FCA US, LLC*,
790 F. App'x 664 (6th Cir. 2019).........................................................15

*Doe v. Miami Univ.*,
882 F.3d 579 (6th Cir. 2018) ...............................................................23

*Empire Merchs., LLC v. Reliable Churchill LLLP*,
    902 F.3d 132 (2d Cir. 2018) ...............................................................................12

*Gamboa v. Ford Motor Co.*,
    381 F. Supp. 3d 853 (E.D. Mich. 2019) ......................................................ix, 21

*Gifford v. Meda*,
    No. 09-13486, 2010 WL 1875096 (E.D. Mich. May 10, 2010)........................23

*Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*,
    786 F.3d 400 (5th Cir. 2015) ...........................................................................11

*Hemi Group, LLC v. City of New York, N.Y.*,
    559 U.S. 1 (2010)...............................................................................................7

*Holmes v. Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992)............................................................................................8

*Ikuno v. Yip*,
    912 F.2d 306 (9th Cir. 1990) .....................................................................ix, 17

*Kirwin v. Price Commc'ns Corp.*,
    391 F.3d 1323 (11th Cir. 2004) ..........................................................................ix

*Lutz v. Chesapeake Appalachia, L.L.C.*,
    717 F.3d 459 (6th Cir. 2013) ............................................................... ix, 16, 17

*United States ex rel. Marlar v. BWXT Y-12, L.L.C.*,
    525 F.3d 439 (6th Cir. 2008) ...........................................................................22

*McLaughlin v. American Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008) .......................................................................11, 12

*Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC*,
    359 F. Supp. 3d 546 (E.D. Tenn. 2019)............................................................15

*P.M.F. Servs., Inc. v. Grady*,
    681 F. Supp. 549 (N.D. Ill. 1988).....................................................................18

*In re Packaged Ice Antitrust Litig.*,
    723 F. Supp. 2d 987 (E.D. Mich. 2010) .......................................................ix, 5

*In re Polyurethane Foam Antitrust Litig.*,
   152 F. Supp. 3d 968 (N.D. Ohio 2015) ...........................................................17

*Primary Ins. Agency Grp., LLC v. Nofar*,
   No. 320039, 2015 WL 1227767 (Mich. Ct. App. Mar. 17, 2015)............... viii, x

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979).......................................................................................12

*Rite Aid Corp. v. Am. Exp. Travel Related Servs. Co.*,
   708 F. Supp. 2d 257 (E.D.N.Y. 2010) ...........................................................14

*San Diego Building Trades Council v. Garmon*,
   359 U.S. 236 (1959).......................................................................................20

*Schwartz v. Sun Co. (R & M)*,
   276 F.3d 900 (6th Cir. 2002) ............................................................................9

*In re Scrap Metal Antitrust Litig.*,
   527 F.3d 517 (6th Cir. 2008) ..........................................................................16

*Silverman v. Niswonger*,
   761 F. Supp. 464 (E.D. Mich. 1991) ...............................................................23

*Sims v. Ohio Cas. Ins. Co.*,
   151 F. App'x 433 (6th Cir. 2005) ................................................................x, 14

*State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*,
   107 F. Supp. 3d 772 (E.D. Mich. 2015) .......................................................x, 12

*State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*,
   No. 14-cv-10266, 2014 WL 5427170 (E.D. Mich. Oct. 24, 2014) ...................15

*Sutliff, Inc. v. Donovan Cos.*,
   727 F.2d 648 (7th Cir. 1984) .....................................................................ix, 17

*Teamsters Local 372, Detroit Mailers Union Local 2040 v. Detroit Newspapers*,
   956 F. Supp. 753 (E.D. Mich. 1997) ...............................................................ix

*Three Crown Ltd. P'Ship v. Caxton Corp.*,
   817 F. Supp. 1033 (S.D.N.Y. 1993) ...............................................................18

*United States v. Haque*,
    315 F. App'x 510 (6th Cir. 2009)........................................................................10

*United States v. Iacobelli*,
    No. 17-20406, 2019 WL 1508035 (E.D. Mich. Apr. 5, 2019) ............................4

*United States v. Jamieson*,
    427 F.3d 394 (6th Cir. 2005) ..............................................................................21

*Wallace v. Midwest Fin. & Mortg. Servs., Inc.*,
    714 F.3d 414 (6th Cir. 2013) ................................................................ vi, ix, 7

## Statutes

18 U.S.C. § 1961(1) .......................................................................................vi, 20

18 U.S.C. § 1964(c) .............................................................................................vi

29 U.S.C. § 186 ....................................................................................................20

29 U.S.C. § 186 ....................................................................................................vi

29 U.S.C. § 186 ....................................................................................................vi

29 U.S.C. § 186 ....................................................................................................20

Labor Management Relations Act ..........................................................................1

RICO .................................................................................................. vi, vii, ix, 11

RICO Section 1962(b) .................................................................................. vii, ix

## Rules

Fed. R. Civ. P. 8(a)................................................................................................5

Fed. R. Civ. P. 9(b) ...............................................................................................5

Fed. R. Civ. P. 12(b)(6)......................................................................................5, 9

## Other Authorities

UAW, Pattern Bargaining (Oct. 25, 2015), https://uaw.org/pattern-
    bargaining/ ..........................................................................................................11

## CONCISE STATEMENT OF ISSUES PRESENTED

1.     Plaintiff in a civil RICO action must allege injury "by reason of" a RICO violation, which means the defendant's predicate acts were both the but-for and proximate cause of those injuries. *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 487 (6th Cir. 2013); 18 U.S.C. § 1964(c). The Sixth Circuit has emphasized that "[p]roximate cause is a 'flexible concept'," including considerations such as "directness" and "foreseeability." *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414, 419 (6th Cir. 2013). GM alleges that but for Defendants' bribery, GM would have saved billions in additional labor-related costs. GM further alleges that Defendants' scheme, which Defendant Iacobelli was instrumental in executing, directly and intentionally harmed GM by imposing on GM higher labor-related costs, none of which are derivative of or result from harm inflicted on others. Has GM alleged that it was injured "by reason of" a RICO violation?

**GM Answers:** Yes

**Defendant Answers:** No

2.     Violations of 29 U.S.C. § 186 are expressly defined as "racketeering activity" under the RICO Act. *See* 18 U.S.C. § 1961(1). Has GM alleged that Defendant Iacobelli engaged in predicate acts of racketeering activity, where GM's detailed allegations are based on Defendant's own admissions that he bribed UAW officials in violation of 29 U.S.C. § 186?

**GM Answers:** Yes

**Defendant Answers:** No

3.      RICO Section 1962(b) does not require a showing that the racketeer exercised formal or "proprietary" control. Has GM alleged claims under Section 1962(b), where it alleges that through bribery and related fraud, Defendants successfully conspired to control the UAW's collective bargaining decisions and the UAW's implementation of collective bargaining agreements?

**GM Answers:** Yes

**Defendant Answers:** No

4.      Has GM alleged a RICO conspiracy claim, where its allegations in part are based on Defendants' admissions, including those of Defendant Iacobelli, that they conspired to engage in racketeering activity?

**GM Answers:** Yes

**Defendant Answers:** No

5.      Are GM's RICO claims timely, where GM filed within the four-year RICO statute of limitations, less than two years after Defendants' scheme to corrupt the collective bargaining process was revealed, and in light of Defendants' fraudulent concealment of their scheme?

**GM Answers:** Yes

**Defendant Answers:** No

6.     Michigan unfair competition law is a "broad and flexible doctrine" addressing "the incalculable variety of illegal practices denominated as unfair competition." *Primary Ins. Agency Grp., LLC v. Nofar*, No. 320039, 2015 WL 1227767, at *5 (Mich. Ct. App. Mar. 17, 2015). Has GM alleged state law claims for unfair competition and conspiracy, where it alleges that Defendants orchestrated a years-long bribery scheme to harm their competitor?

**GM Answers:** Yes

**Defendant Answers:** No

## STATEMENT OF CONTROLLING
## OR MOST APPROPRIATE AUTHORITIES

**I.     GM Has Pled RICO Causation**

1.   *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008)

2.   *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473 (6th Cir. 2013)

3.   *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414 (6th Cir. 2013)

**II.    GM Has Pled Predicate Racketeering Acts**

4.   *Butchers' Union, Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 631 F. Supp. 1001 (E.D. Cal. 1986)

5.   *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853 (E.D. Mich. 2019)

6.   *Teamsters Local 372, Detroit Mailers Union Local 2040 v. Detroit Newspapers*, 956 F. Supp. 753 (E.D. Mich. 1997)

**III.   GM Has Stated a Section 1962(b) Claim**

7.   *Ikuno v. Yip*, 912 F.2d 306 (9th Cir. 1990)

8.   *Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648 (7th Cir. 1984)

**IV.    GM Has Pled a Section 1962(d) Claim**

9.   *Kirwin v. Price Commc'ns Corp.*, 391 F.3d 1323 (11th Cir. 2004)

**V.     GM's RICO Claims Are Timely**

10.   *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012)

11.   *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987 (E.D. Mich. 2010) (Borman, J.)

12.   *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459 (6th Cir. 2013)

13. *Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433 (6th Cir. 2005)

14. *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772 (E.D. Mich. 2015) (Borman, J.)

**VI.     GM Has Pled Unfair Competition and Civil Conspiracy Claims**

15. *Primary Ins. Agency Grp., LLC v. Nofar*, No. 320039, 2015 WL 1227767 (Mich. Ct. App. Mar. 17, 2015)

## **INTRODUCTION**

Defendant Alphons Iacobelli, the former Vice President of Employee Relations of Defendant FCA, has admitted that he participated in the successful bribery scheme of UAW officials to obtain "benefits, concessions, and advantages" for FCA.  As FCA's highest ranking labor relations executive, Iacobelli was directly responsible for negotiating and implementing labor agreements with the UAW and worked closely with UAW officials.  Unknown to GM at the time, over the several years that he was in this role, Iacobelli, in coordination with the other Defendants and at the direction of FCA and FCA NV's CEO Sergio Marchionne, used his FCA position to direct a classic racketeering scheme. The admitted objective of the scheme was to pay bribes to obtain FCA advantages in labor costs and efficiency, while ensuring that higher costs were placed on GM.  Defendant Iacobelli's conduct implicated numerous RICO predicate acts to which he pled, including mail and wire fraud and providing items of value to union officials in violation of the Labor Management Relations Act. Iacobelli's conduct was about more than submitting false personal tax returns. It was about a multi-year bribery scheme orchestrated by FCA and executed by him. That scheme directly harmed GM.

There can be no dispute as to Iacobelli's role in FCA's years-long bribery scheme.  In January 2018, Iacobelli pled guilty as to his participation, admitting that he and the other Defendants had bribed UAW officials to "obtain benefits,

1

concessions, and advantages for FCA in the negotiation, implementation, and administration of the collective bargaining agreements between FCA and the UAW." (Compl. ¶ 154.) Iacobelli expressly conceded in his Sentencing Memorandum that this was "exactly why [the bribes] were made," resulting in direct injury to GM. (Compl. ¶ 148.) Despite his clear admissions as to the FCA bribery scheme, and his role in it, Defendant Iacobelli now seeks to distance himself from those activities—by suggesting it centered around underreporting of personal income tax—and the harm inflicted upon GM.

Although Defendant Iacobelli brings a separate Motion to Dismiss from FCA, he argues for dismissal on virtually all the same grounds as FCA and explicitly "joins in and concurs with the arguments made" by FCA's motion. (IBr. at 2). Specifically, like FCA, Iacobelli argues that GM has failed to meet its pleading requirements:

- GM has not adequately pled "but for" causation (Br. at 11-13; IBr. at 6-7);

- GM has not adequately pled proximate causation (Br. at 14-25; IBr. at 7-11);

- GM has suffered no cognizable RICO injury (Br. at 20-25; IBr. at 12-15);

- GM's RICO claims are time-barred (Br. at 34-42; IBr. at 15-20);

- GM has not plausibly alleged that Defendants acquired an interest in, or maintained control of, the UAW (Br. at 30-33; IBr. at 20-22);

- GM's RICO claims are preempted because they are within the exclusive jurisdiction of the NLRB (Br. at 26-28; IBr. at 22-23); and

- GM has not adequately pled mail and wire fraud (Br. at 28-30; IBr. at 23-24.)

Generally, Iacobelli's arguments track those of FCA. To ease the burden on the Court, GM will not repeat all of its arguments raised in opposition to FCA's motion, and instead incorporates those arguments by reference. Instead, GM will focus on Iacobelli's arguments where they vary from those of FCA.

## FACTUAL BACKGROUND

As GM summarizes in its opposition to FCA's motion to dismiss, the Complaint alleges a years-long scheme in which FCA bribed UAW leaders to secure significant labor cost advantages and ensure that GM would sustain higher costs, causing GM to incur billions in damages. (Dkt. 64, FCA Opp. at 4-7.)[2]

From 2008 to 2015, Iacobelli was employed as the Vice President of Employee Relations at FCA and Co-Chairman of the NTC and its Joint Activities Board. (Compl. ¶ 18.) In that role, Iacobelli was responsible for negotiating and implementing labor agreements with the UAW and resolving labor disputes and grievances. (*Id.*)

The indictments and plea agreements reveal that Iacobelli was a key participant in FCA's bribery scheme. Iacobelli and other former FCA executives

---

[2] References to "FCA Opp." are to Plaintiffs' Opposition to FCA US LLC's Motion to Dismiss the Complaint (Dkt. 64). GM incorporates by reference that background for the purposes of this brief. (FCA Opp. at 4-7.)

3

"knowingly and voluntarily joined a conspiracy in which [FCA] and its executives agreed to pay and deliver, and willfully paid and delivered, more than $1.5 million in prohibited payments and things of value to officers and employees of the UAW." (*Id.* ¶ 5.) From 2009 to 2015, Iacobelli personally directed millions in illegal payments to UAW officials. (*Id.* ¶¶ 64, 175.) Iacobelli has admitted that in directing these bribes, he was "acting in the interest of FCA." *United States v. Iacobelli*, No. 17-20406, 2019 WL 1508035, at *1 (E.D. Mich. Apr. 5, 2019). "FCA, through Iacobelli and its executives, was implementing a corporate policy to buy good relationships with UAW officials," making an "investment" by "spending thousands here" to procure special advantages. (Compl. ¶ 64.)

Iacobelli leveraged these bribes to exercise control over UAW decision-making. For example, in 2011 Iacobelli secured the UAW's "full fledged partnership" to lower FCA's manufacturing costs and position FCA "firmly among the winners of the global automotive manufacturing community." (*Id.* ¶ 72.) Iacobelli also managed to "script" UAW officials to do FCA's bidding. (*Id.* ¶ 89.)

Iacobelli took affirmative actions to conceal this illegal scheme for years, including by funneling payments through false-front companies and charities, filing false tax returns, and instructing co-conspirators "not to put the details of certain expenditures . . . in writing." (*Id.* ¶ 151(b)-(e), (g).)

In January 2018, Iacobelli entered into a plea agreement admitting guilt for his role in FCA's years-long bribery scheme. (*Id.* ¶ 154.) In his plea agreement, Iacobelli revealed for the first time that FCA had bribed UAW officials to "obtain benefits, concessions, and advantages for FCA in the negotiation, implementation, and administration of the collective bargaining agreements between FCA and the UAW." (*Id.*) As Iacobelli stated in his sentencing memorandum, "***That is exactly why [the bribes] were made***." (*Id.* ¶ 148.) Iacobelli admitted to conspiring in this unlawful behavior, and was sentenced to prison for it. He cannot now deny it to avoid GM's claims.

## ARGUMENT

"When reviewing a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1001-02 (E.D. Mich. 2010) (Borman, J.). This same standard applies to RICO. While fraud-based predicate acts must be pled with particularity under Rule 9(b), the "other elements of a RICO claim . . . need satisfy only the 'short and plain statement' standard of Rule 8(a)." *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 666 (2d Cir. 2014).

## I.    GM Has Pled But-For Causation.

In a total of two conclusory sentences, with virtually no discussion, Iacobelli summarily claims that GM failed to plead that the alleged RICO predicate acts were a "but for" causation of GM's alleged injury.  (IBr. at 7.)  To establish but-for causation, a plaintiff need only allege that it would not have been injured in the absence of defendant's predicate acts. As GM explains in its opposition to FCA's motion to dismiss, GM has more than satisfied this pleading standard. (FCA Opp. at 8-11.) For example, GM alleges that "through its bribery, FCA ensured that . . . special advantages were conferred on FCA" while the "same or similar advantages were not provided to" GM. (Compl. ¶ 71.) In 2015, FCA acquired the lead negotiation position "through the years-long bribery scheme," to which Iacobelli was a critical participant and then used that position and its control of the UAW to "structure[] and agree[] to . . . CBA terms to force unanticipated higher costs on GM." (*Id.* ¶¶ 125, 134.)   By his own admission, Iacobelli actively participated in this bribery scheme for FCA's benefit, personally directing millions in illegal payments to UAW officials. (*Id.* ¶¶ 64, 175.) That Iacobelli was not employed at FCA when the 2015 CBA was consummated is of no consequence.  As GM pled and contrary to Defendant's assertion, Iacobelli was indeed employed by FCA during virtually all of the period that GM "considers relevant to its Complaint." (IBr. at 4.) He admittedly assisted in establishing the bribery scheme that

6

successfully corrupted the 2015 negotiations and he successfully concealed his activities for several years.

Simply put, but for (or "by reason of") Iacobelli's predicate acts that enabled FCA and FCA NV to accomplish their scheme, GM would not have suffered the injuries for which it seeks to recover through this action.  Even a cursory read of GM's Complaint exposes the deficiencies of Iacobelli's superficial "but for" argument.

## II.    GM Has Pled Proximate Cause.

Iacobelli, like FCA, argues that GM "does not plausibly or adequately allege that the predicate acts were the proximate cause of GM's alleged injury." (IBr. at 7.) Citing virtually all the same cases as FCA, Iacobelli argues that GM must allege that its injuries were "<u>directly</u> caused by the predicate acts."  (*Id.* (emphasis in original).) Iacobelli's proximate cause arguments fail for the same reasons as FCA's.

For example, like FCA, Iacobelli ignores the Sixth Circuit's *Wallace* case.  As the Sixth Circuit explained after *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010), the Supreme Court "read RICO as incorporating the many traditional proximate-cause considerations found at common law," one of which "is *foreseeability*—whether the plaintiff's injury was a foreseeable consequence of the conduct alleged." *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414, 419 (6th Cir. 2013); *see also In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 487 (6th

Cir. 2013) (RICO plaintiffs "need only show that the defendants' wrongful conduct was a substantial and foreseeable cause of the injury and the relationship between the wrongful conduct and the injury is logical and not speculative.").   GM's allegations readily satisfy these standards. (FCA Opp. at 11-12.)

Iacobelli also ignores GM allegations that it was directly victimized: (1) FCA, "through its bribery," obtained various labor cost advantages and, as part of the scheme, UAW officials ensured that GM incurred higher labor, manufacturing, and prescription drug costs in the years leading to the 2015 CBA; and (2) through the 2015 CBA, FCA imposed outsized and asymmetrical costs on GM in an attempt to force a merger with FCA NV. (Compl. ¶¶ 7, 71, 82-83, 132, 134, 178.) Consistent with the requirements set forth in *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992), GM alleges, in detail, the direct link between the RICO predicate acts (Defendants' bribes facilitated by Iacobelli, among others) and the harm to GM (higher costs and other damages). (FCA Opp. at 12.) GM alleges a direct link to its harm that is not "too remote" or "purely contingent" or "indirect". (IBr. at 7.) Iacobelli's contention that GM "does not allege, since it cannot allege, that GM was directly injured by the alleged predicate acts" ignores the express allegations of the Complaint. (IBr. at 8.)

Iacobelli further avers there is no proximate cause because the terms of the 2015 CBA resulted from "further negotiation and agreement with, and independent

ratification by, GM's UAW members." (IBr. at 9-10.) Such assertion, which cannot be considered in the context of a Rule 12(b)(6) motion, does not sever proximate cause. GM alleges facts demonstrating that if Defendants, including Defendant Iacobelli, had not bribed UAW officials, FCA would not have been selected as the "lead," GM's CBA would not have been patterned off the fraudulent FCA CBA deal, and GM would have saved more than $1 billion in labor costs. GM alleges facts demonstrating that its harm was the foreseeable consequence—indeed the ***intended*** consequence through pattern bargaining—of Defendants' fraud. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir. 1994) (in RICO case involving bribery of union officials, fact that other causes may also have contributed to CBA concessions did not sever proximate cause); *Schwartz v. Sun Co. (R & M)*, 276 F.3d 900, 904 (6th Cir. 2002) ("Where there is evidence, as in this case, which tends to show that Schwartz's losses were a result of Sun's conduct, as well as evidence which tends to show that his losses were attributable to other factors, it is normally up to the trier of fact to decide which is the case.").

Iacobelli also argues that his actions could not be the proximate cause of GM's alleged injuries as a result of the "2015 negotiations and the 2015 GM-UAW CBA since Mr. Iacobelli was by the time those negotiations commenced no longer associated with FCA." (IBr. at 9). To start, Iacobelli left FCA in June 2015, months after FCA had "initiated its takeover plans" and only weeks before collective

bargaining officially commenced. (Compl. ¶¶ 101, 104-05, 109.) Iacobelli has admitted he was engaged in the bribery scheme for 6 years prior to his departure from FCA. (Compl. ¶¶ 57, 105, 148, 151) The Court cannot decide on the pleadings that Iacobelli's departure in the middle of the scheme that had been ongoing for years somehow absolves him of all responsibility for the scheme's consequences. *United States v. Haque*, 315 F. App'x 510, 523 (6th Cir. 2009) ("[A] conspirator is liable for substantive offenses of his co-conspirator(s) in furtherance of the conspiracy, unless and until he formally withdraws from the conspiracy.").

Equally importantly, GM alleges that it was the years-long bribery scheme that allowed FCA to corrupt the 2015 CBA negotiations and harm GM. (*See, e.g.*, Compl. ¶ 111 (Marchionne "purchased the support of the UAW to support a merger with GM"), ¶ 125 ("lead" bargaining position was "secured through the years-long bribery scheme").) Iacobelli was admittedly a key and active participant in that scheme. He cannot escape liability simply because he left FCA weeks before an objective of the illegal scheme came to fruition.

Finally, like FCA, Iacobelli seeks to recast GM's claim for damages into one for loss of market share. (IBr. at 11.) But, as explained in GM's response to FCA's motion to dismiss, GM is not seeking recovery for such a claim. Like FCA, Iacobelli does not cite a single case where plaintiffs allege a direct link between the predicate acts and the plaintiffs' higher costs, the imposition of which was the express purpose

of the RICO enterprise. While Iacobelli argues that GM could have "voluntarily" resisted the use of the FCA-UAW CBA as a pattern to avoid higher labor costs, such argument ignores the reality of pattern bargaining.[3] And, even if true, which it is not, that does not sever proximate cause. *See Cox,* 17 F.3d at 1399.

## III. GM Has Pled a Cognizable RICO Injury.

Iacobelli argues that the injuries that GM alleges are not cognizable RICO injuries because they are "benefit of the bargain" damages premised on unenforceable "expectations" to which GM had no "legal entitlement." (IBr. at 12-15.) In doing so, he ignores that "a RICO plaintiff need not demonstrate legal entitlement, a point the Supreme Court made clear in *Bridge v. Phoenix Bond & Indemnity Co.*" *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 409 (5th Cir. 2015). GM's damages do not implicate speculative expectations, and GM is not seeking recovery for the value of services it paid for but did not receive. (*See* IBr. at 13.) Unlike *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 228-29 (2d Cir. 2008), a class certification decision which involved plaintiffs' "expectation" that they would have purchased safer cigarettes but for defendants' misleading

---

[3]  (Compl. ¶ 117, citing to UAW, Pattern Bargaining (Oct. 25, 2015), https://uaw.org/pattern-bargaining/ ("Pattern bargaining is a core part of the UAW's bargaining strategy. By taking a comprehensive, building block approach, UAW members win strong collective bargaining agreements based on incremental, sustainable improvements applied to all companies covered by the pattern.").)

advertising, GM alleges concrete financial loss: it paid billions more in labor-related costs as targeted by a bribery scheme that was designed to directly victimize GM. To calculate these damages, the Court need not "conceptualize the impossible—a healthy cigarette—and then [ ] imagine what a consumer might have paid for such a thing." *McLaughlin*, 522 F.3d at 229. This case does not involve purchases of hypothetical products or theoretical "lost sales" or business. *See Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 143 (2d Cir. 2018) (determining liquor distributor's "lost sales" damages from competitor's scheme to smuggle liquor across state lines was "speculative in the extreme"). GM's damages consist of labor-related costs FCA forced on GM—through Defendants' bribery scheme—that GM actually paid. These payments resulting from Defendants' fraudulent scheme constitute injury to GM's "business or property" within the meaning of RICO. *See State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 783 (E.D. Mich. 2015) (Borman, J.) (holding that insurance company's payment of fraudulent claims satisfied RICO's "business or property" injury requirement); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("When a commercial enterprise suffers a loss of money it suffers an injury in both its 'business' and its 'property.'").

Iacobelli also asserts that Plaintiff General Motors Company must be dismissed because it "is not specifically alleged to have suffered and could not have,

12

under any circumstances, suffered any direct injury." (IBr. at 11-12.) This is pure speculation and inconsistent with the Complaint's express allegations. Those allegations include the fact that Defendants' scheme imposed ***billions*** of dollars in costs upon GM (including General Motors Company) expressly to force a merger between FCA NV and General Motors Company. Iacobelli cites no authority suggesting the Court can assume on the pleadings that contrary to GM's allegations, all damages were borne solely by General Motors LLC. Even if General Motors LLC were a ***more*** direct victim of the scheme, "RICO standing extends to all directly injured parties, not just the most directly injured among them." *Baisch v. Gallina*, 346 F.3d 366, 374 (2d Cir. 2003).

## IV. GM's RICO Claims Are Timely.

Iacobelli argues that GM's RICO claims are untimely under the four-year statute of limitations because "GM's allegations in its own Complaint evidence that GM was well-aware of 'storm warnings' as early as 2009." (IBr. at 16.) Iacobelli's timeliness argument in large part mirrors those of FCA, and GM refers the Court to GM's opposition for its responsive positions. (FCA Opp. at 31-41.) Nonetheless, Iacobelli presents unique arguments that warrant separate discussion.

***First***, while FCA concedes that GM's claims associated with the 2015 CBA are timely, (Br. at 34), Iacobelli does not. He asserts those claims are time-barred because "GM knew or should have known of its alleged 'injury'" ***during the course***

*of CBA negotiations* in the weeks before the CBA was signed in November 2015.

(IBr. at 17.) This is yet another inappropriate argument at the motion to dismiss stage

and would extend the discovery rule into uncharted territory by rendering injuries

"discovered" before they even occurred. GM's injuries relating to the 2015 CBA

involve the $1 billion-plus in incremental labor costs imposed by the ratified

agreement, to which GM was not bound before the CBA's effective date of

November 23, 2015. (Compl. ¶¶ 136, 131 n.67.) An injury from a contract does not

occur until the contract takes effect. *See, e.g.*, *Rite Aid Corp. v. Am. Exp. Travel*

*Related Servs. Co.*, 708 F. Supp. 2d 257, 265 (E.D.N.Y. 2010).

In any event, as GM explains in its opposition to FCA's motion, GM could

not have discovered its RICO injuries until it was "presented with evidence

suggesting the possibility of fraud" that impacted it. (FCA Opp. at 35-41 (citing *Sims*

*v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, 436 (6th Cir. 2005).) That happened no

earlier than January 2018, when Iacobelli revealed Defendants' scheme to corrupt

the collective bargaining process. (Compl. ¶ 154.) "Defendants' countervailing

assertion is not evidence that plaintiff knew of the fraud, but instead an argument

that plaintiff should have known—an argument that cannot be proved at this stage

in the litigation." *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No.

14-cv-10266, 2014 WL 5427170, at *7 (E.D. Mich. Oct. 24, 2014); *see also Munson*

*Hardisty, LLC v. Legacy Pointe Apartments, LLC*, 359 F. Supp. 3d 546, 566 (E.D.

Tenn. 2019) ("Determining the applicable statute of limitations period is a question of fact" that cannot be resolved on the pleadings).

Iacobelli's particular focus on *DeShetler* does not aid him in this RICO context. (IBr. at 16 (asserting "[t]he Sixth Circuit has recently held that unprecedented departure from long and well-established practice is properly a factor considered by the Court in determining when a plaintiff knew or should have known of a breach").) *DeShetler* did not involve RICO claims, but rather alleged breaches of the union's duty of fair representation. *DeShetler v. FCA US, LLC*, 790 F. App'x 664, 671 (6th Cir. 2019). As the court in *DeShetler* noted, "an unprecedented departure from past practice . . . might very well constitute a breach of [a] union's duty of fair representation." *Id.* A "departure from past practice" is not a RICO predicate act violation, and GM's knowledge of "departures" does not equate to knowledge of RICO violations. No case law supports knowledge of such "departures" as a basis to assert a RICO claim.

***Second***, Iacobelli argues that the statute of limitations cannot be tolled as to him because he asserts that he did not "personally" conceal any of his illegal activities on behalf of his employer and that GM's claims cannot be "tolled by reason of the conduct of others." (IBr. at 20.) That argument is wrong twice over. For one, Iacobelli ***did*** conceal his criminal conduct and its purpose. For example, GM alleges that Iacobelli filed false tax returns and instructed Durden "'not to put the details of

15

certain expenditures made for the benefit of [Holiefield] in writing.'" (Compl. ¶ 151(g).) These "active steps to hide evidence" constitute fraudulent concealment as a matter of law. *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 447 (6th Cir. 2012). Second, Iacobelli's argument fails because GM's claims **can** be tolled by the conduct of others. "Fraudulent concealment [ ] may be established through the acts of co-conspirators." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 538 (6th Cir. 2008); *see also Carrier*, 673 F.3d at 447 n.8 (same). Simply put, Iacobelli, like the other Defendants, concealed his fraudulent scheme.

**Third**, Iacobelli asserts that GM "fail[s] to describe any efforts that GM made to inquire into [Defendants'] alleged misconduct," which he alleges prevents tolling of the statute of limitations (IBr. at 20.) But Iacobelli references only "favorable" treatment for FCA; he does not identify any available evidence of **misconduct**. "[O]nly information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 475-76 (6th Cir. 2013). Hence, dismissal is proper only where there are "ominous signs of misconduct" and "grave[] failures to investigate such misconduct," such as public Congressional hearings relating to the same scheme alleged in the complaint. *In re Polyurethane Foam Antitrust Litig.*, 152 F. Supp. 3d 968, 1007 (N.D. Ohio 2015) (collecting cases). No such "ominous signs of misconduct" existed here. Until Defendants'

bribery scheme was revealed through indictments and plea agreements, GM alleges that it "reasonably but incorrectly believed that FCA Group acted in good faith and negotiated agreements with UAW leadership at arm's length" and "had no way to know" of Defendants' scheme. (Compl. ¶¶ 149, 150, 155.) Ultimately, "these are questions for summary judgment or for trial, and they should not be resolved on a motion to dismiss." *Lutz*, 717 F.3d at 476.

## V.    GM Has Pled That Defendant Iacobelli Exercised Control Over the UAW.

The plain language of § 1962 does not require a showing that the racketeer obtained formal and "proprietary" control over the business, "such as the acquisition of stock." (Br. at 31.) *See, e.g.*, *Ikuno v. Yip*, 912 F.2d 306, 310 (9th Cir. 1990) ("[A] finding of control under § 1962(b) is best determined by the circumstances of each case and does not require formal control such as the holding of majority stock or actual designation as an officer or director."); *Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 653 (7th Cir. 1984) ("[C]ontrol within the meaning of the statute need not be formal—need not be the kind of control that is obtained, for example, by acquiring a majority of the stock of a corporation."). Indeed, "control"—just "like the other RICO elements"—"must be read broadly." *Three Crown Ltd. P'Ship v. Caxton Corp.*, 817 F. Supp. 1033, 1045 n.26 (S.D.N.Y. 1993).

GM has alleged "control" within the meaning of § 1962 by alleging that through bribery and related fraud, Iacobelli and the other Defendants gained the

ability to influence collective bargaining terms to which the UAW would agree, the implementation of those terms, and the subsequent imposition of those terms upon GM through pattern bargaining. (Compl. ¶¶ 6, 71-83, 148, 154, 162, 175.) Iacobelli directed many of these bribes, has admitted they were intended to influence collective bargaining terms, and even "scripted" UAW officials to do FCA's bidding. (*Id*. ¶¶ 89, 148, 154, 175.) As one example of the degree of Iacobelli's control, in 2011 he secured the UAW's "full fledged partnership" to lower FCA's manufacturing costs and position FCA "firmly among the winners of the global automotive manufacturing community." (*Id.* ¶ 72 (citing Oct. 12, 2011 Letter from Iacobelli to UAW official Holiefield).) This benefit was provided to FCA "in return for FCA Group's bribes" and, as intended, denied to GM. (*Id.* ¶ 71.) This is a classic example of "control" under Section 1962(b). *See, e.g.*, *P.M.F. Servs., Inc. v. Grady*, 681 F. Supp. 549, 557 n. 16 (N.D. Ill. 1988) (causing an entity "to enter into many transactions it would otherwise not have … That is 'control'….").

These allegations are far from "wholly conclusory," as Iacobelli contends (IBr. at 20.) Rather, more than fulfilling its Rule 8 pleading requirements, *see D. Penguin Bros.*, 587 F. App'x at 666, GM alleges with specificity which terms the UAW agreed to and when, and that the UAW would not have agreed to these various terms but for the bribery scheme that Iacobelli conspired to execute. (Compl. ¶¶ 71-83.) GM further specifically identifies the individual UAW leaders over whom

Iacobelli and the other Defendants were able to control through bribery. (*Id.* ¶¶ 23-28, 57-59, 63-70, 89, 95-98.)

As with FCA, Iacobelli relies on cases in which plaintiffs failed to allege the requisite control or resulting injury. (IBr. at 20-22.) These cases are inapposite for the same reasons explained in GM's opposition to FCA's motion. (FCA Opp. at 28.) For example, in *Continental 332 Fund, LLC v. Albertelli*, the plaintiff ***did not even allege*** that defendants controlled the entity in question. 317 F. Supp. 3d 1124, 1144 (M.D. Fla. 2018). In *Advocacy Organization for Patients and Providers v. Auto Club Insurance Association*, the complaint was "entirely silent" as to defendant's control. 176 F.3d 315, 329 (6th Cir. 1999). In *In re American Honda Motor Co., Dealerships Relations Litigation*, plaintiff alleged that defendants' bribes gave them only "some influence over discretionary activities" (Honda's allocation decisions). 941 F. Supp. 528, 556 (D. Md. 1996). While the court found these allegations were insufficient, it ***sustained*** a Section 1962(b) claim against Honda's executives because they allegedly maintained control over a wide swath of Honda's operations. *Id.* at 550. It is this level of control—commanding "essential functions  . . . by compromising certain UAW leaders and causing these leaders to accede to specific requests from FCA but not other automakers"—that GM has pled. (Compl. ¶ 33.)

## VI.   29 U.S.C. § 186 Violations Are Not The Exclusive Jurisdiction Of The NLRB.

Iacobelli argues, just like FCA, that GM's claims based on bribes made in violation of the Taft-Hartley Act, 29 U.S.C. § 186 (Compl. ¶ 65), "are at their core a bad faith bargaining claim, wholly dependent upon a finding that as a consequence of the alleged predicate acts, the UAW negotiated the 2015 GM-UAW CBA (and earlier CBAs) in bad faith." (IBr. at 22-23.) From that recasting, Iacobelli argues that the NLRB has exclusive jurisdiction over these bad-faith-bargaining claims under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959). Because Iacobelli's NLRB argument mirrors the argument that FCA raises, GM does not restate its full argument in opposition here.

Iacobelli's argument, like FCA's, rests on a distorted reading of GM's Complaint. GM does not allege predicate acts premised on "bad faith" within the meaning of the NLRA, but rather alleges that Defendants engaged in fraud and racketeering by bribing UAW officials in violation of 29 U.S.C. § 186. The NLRB has no enforcement role with 29 U.S.C. § 186, and § 186 violations are expressly included as statutory RICO predicate acts. 18 U.S.C. § 1961(1) ("racketeering activity" includes "any act which is indictable under title 29, United States Code, section 186"). As a result, courts have repeatedly held that *Garmon* preemption does not apply when a plaintiff alleges RICO claims based on bribes made in violation of § 186. (FCA Opp. at 22-23.) Iacobelli fails to acknowledge this case law.

## VII.   GM Has Pled Mail and Wire Fraud Predicate Offenses.

Iacobelli contends, like FCA, that GM has not stated predicate acts of mail and wire fraud because it has not pled any affirmative misrepresentations, or any misrepresentations with "fraudulent intent." (IBr. at 23-24). Iacobelli's argument ignores that "[t]he Sixth Circuit has . . . repeatedly confirmed that *concealment* of material facts can constitute a fraudulent scheme sufficient to establish RICO liability." *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 882 (E.D. Mich. 2019) (collecting cases). Further, GM need not allege individual mail or wire transmissions that are themselves fraudulent because mail and wire fraud require only "use of the mails [or wires] *in furtherance* of the scheme." *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005).

GM has plainly met these pleading requirements. The Complaint describes in detail how Defendants established and executed the fraudulent bribery scheme, including how Iacobelli authorized and directed specific payments in furtherance of such scheme. (*See, e.g.*, Compl. ¶ 173(a) ("Beginning in July 2009, FCA began a long-running scheme of improper payments to UAW officials"); *id*. ¶ 173(b)-(d), (f)-(j) (describing specific payments made to the UAW); *id*. ¶ 173(b), (d), (g), ¶ 175(a)-(e) (describing specific payments that Iacobelli authorized and directed).) The Complaint also describes how Defendants concealed this scheme, including by "us[ing] the credit card accounts and the bank accounts of the NTC to conceal over

21

$1.5 million" in bribes, and how Iacobelli specifically conspired to use charities and file fraudulent tax returns to conceal those bribes. (*Id*. ¶ 151(a)-(e).) The Complaint also explains how Defendants furthered this scheme by sending bribes through mail and wires (*id*. ¶¶ 170, 173). (*See also id*. ¶¶ 69, 151(g).) Even if an affirmative misrepresentation were required (and it is not), the Complaint alleges numerous such misrepresentations, including the filing of false tax documents. (*Id*. ¶¶ 151(d)-(e), 176(c).)

Iacobelli also argues that GM's allegations do not satisfy Rule 9(b). (IBr. at 23-24.) This is incorrect. "Where a complaint alleges a complex and far-reaching fraudulent scheme," the complaint must "provide examples of specific fraudulent conduct that are representative samples of the scheme." *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 445 (6th Cir. 2008). The Complaint provides a litany of specific examples of Defendants' bribes and efforts to conceal their scheme. (*E.g.*, Compl. ¶¶ 151, 171, 173-77.) No more is required. (*See* FCA Opp. at 25-26.)

Iacobelli's argument that GM has not pled fraudulent intent also ignores the allegations of GM's Complaint. (IBr. at 24.) The Complaint expressly and repeatedly alleges that Defendants, including Iacobelli, engaged in a years-long bribery scheme, knowingly filed false tax returns, and intentionally lied and concealed the scheme to cover their tracks. Unlike the plaintiffs in *Gifford v. Meda*, on which Iacobelli exclusively relies, GM was an intended and direct victim, not "part of the alleged

scheme.", No. 09-13486, 2010 WL 1875096, at *19 (E.D. Mich. May 10, 2010) (Borman, J.). The "nature and extent of the misrepresentations alleged gives rise to a strong inference of fraudulent intent," *Silverman v. Niswonger*, 761 F. Supp. 464, 470 (E.D. Mich. 1991), particularly because "all reasonable inferences must be drawn in" GM's favor. *Doe v. Miami Univ.*, 882 F.3d 579, 593 (6th Cir. 2018).

## <u>CONCLUSION</u>

GM respectfully requests that the Court deny Iacobelli's motion to dismiss.

Dated: March 13, 2020                          Respectfully submitted,

**KIRKLAND AND ELLIS LLP**          **HONIGMAN LLP**

By: */s/ Hariklia Karis, P.C.*          By: */s/ Jeffrey K. Lamb*
Hariklia Karis, P.C.                              Jeffrey K. Lamb (P76738)
Jeffrey L. Willian, P.C.                         2290 First National Building
300 North LaSalle                                 660 Woodward Avenue
Chicago, IL 60654                                 Detroit, MI 48226
Telephone: (312) 862-2000                 Telephone: (313) 465-7000
hariklia.karis@kirkland.com              jlamb@honigman.com
jeffrey.willian@kirkland.com

Austin Norris
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4200
austin.norris@kirkland.com

*Attorneys for Plaintiffs General
Motors LLC and General Motors
Company*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the

Court's CM/ECF system on March 13, 2020.


*/s/ Jeffrey K. Lamb*_____
Jeffrey K. Lamb