Abigail V. Carter (acarter@bredhoff.com)
BREDHOFF & KAISER, PLLC
805 15th St. NW, Suite 1000
Washington, DC 20005
202-842-2600
202-842-1888 (FAX)

Attorney for Nonparty UAW

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| General Motors, LLC, General Motors Company, | |
| Plaintiffs, | |
| v. | No. 2:19-cv-13429 |
| | Hon. U.S.D.J. Paul D. Borman |
| FCA US LLC, *et al.*, | Hon. U.S.M.J. David R. Grand |
| Defendants. | |

**SUPPLEMENTAL RESPONSE OF NONPARTY UAW IN OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE RULE 26(d)(1)**

**INTRODUCTION**

On February 18, 2020, the Court ordered further briefing regarding "GM's concerns about preservation of evidence in the possession or control of third-party United Auto Workers [UAW]." Dkt. No. 55. GM's March 3 submission in response fails to articulate a single particularized concern with the UAW's current efforts to preserve evidence related to this case. Instead, GM poses "questions" about UAW's document-preservation efforts with respect to certain government investigations and unrelated litigation going back to 2016, well before UAW could have reasonably anticipated the present lawsuit. As we show, GM's concerns are both beside the point and unfounded. Nevertheless, to allay any concerns the Court might have as to the scope or scale of the UAW's document-preservation efforts, the UAW submits four declarations from UAW staff providing information addressing GM's "questions." In light of this additional evidence, Court-ordered preservation measures are unwarranted and the Court's February 18 Order staying discovery should remain in effect as to nonparty UAW.

**I.      GM FAILS TO ARTICULATE A PARTICULARIZED CONCERN REGARDING UAW'S PRESERVATION OF EVIDENCE**

In response to the Court's Order, GM raises four purported concerns with UAW's document preservation. Specifically, GM points to: (1) the UAW's alleged failure to implement a "comprehensive litigation hold" until June 2018; (2) the efforts of some former UAW officials to conceal or destroy evidence of their own

corruption; (3) the July 2019 fire at UAW Headquarters; and (4) the U.S.

Attorney's statements about the UAW's lack of cooperation with his investigation.

Dkt. No. 57 at 2-5. None of these concerns has anything to do with UAW's

preservation of evidence related to this case. In any event, even taken on their own

terms, each of GM's purported concerns is unfounded.

1.      First, the UAW has maintained an appropriately broad litigation hold

at all points during the U.S Attorney's investigation, and the UAW's decision to

implement an organization-wide litigation hold in June 2018 was fully consistent

with its document-preservation obligations. Although the duty to preserve evidence

attaches when a party becomes reasonably aware of potential litigation, a

preserving party is not under a duty to "preserve every shred of paper, every e-mail

or electronic document, and every backup tape." *Zubulake v. UBS Warburg LLC*,

220 F.R.D. 212, 217 (S.D.N.Y. 2003) (citing *The Sedona Principles: Best*

*Practices, Recommendations & Principles for Addressing Electronic Document*

*Discovery* cmt. 6.h). Rather, a party is obligated to preserve only that evidence that

it "should have known . . . may be relevant to future litigation." *John B. v. Goetz*,

531 F.3d 448, 459 (6th Cir. 2008) (internal quotation marks omitted).

Here, UAW became aware of the "Corruption Scandal" identified in GM's

subpoena when the Union was served with a Dept. of Labor subpoena on or about

January 29, 2016. Ganatra Decl. ⁋ 3. That subpoena requested documents related to

2

fourteen individuals, ten of whom had accounts in the Union's Outlook email server.  The accounts of those ten individuals, as well as those of the then International President and Secretary-Treasurer were promptly placed on litigation hold. The Union then specifically informed the active and retired UAW employees listed in the subpoena of their document-preservation responsibilities.[1] *Id.* at ¶ 8; Sec. Sodko Decl. at ¶ 7. As the scope of the investigation grew, so did the scope of UAW's litigation hold, until the UAW decided to implement an organization-wide hold in June 2018, well before it had reason to anticipate the present litigation. Sec. Sodko Decl. ¶ 9.  Because they tracked the scope of the matters under investigation, the UAW's litigation holds were fully in keeping with best practices for document preservation. *The Sedona Principles*, *supra*, 3d ed., cmt. 5.a ("Preservation obligations may expand, or contract, as the contours of claims and defenses are clarified during the pendency of the matter.").

2.     Second, the actions of certain former UAW officials to conceal or destroy documents to hide their own criminal activity say nothing about *the UAW's* efforts to preserve evidence that might be relevant to this litigation (or the U.S. Attorney's investigation). As GM well knows, the charged former officials it points to—including Edward "Nick" Robinson, Vance Pearson, and Gary Jones—

---

[1] Two of the individuals named in the subpoena, Nate Gooden and General Holiefield, died prior to the January 28, 2016 subpoena. A third individual was never a UAW employee. Ganatra Decl. ¶¶ 6-7.

are alleged to have defrauded and embezzled from the UAW. The charges against these former officials center on the masking of personal expenses as legitimate Union expenses or the diversion of UAW funds through unsubstantiated checks drawn on Union accounts. *See, e.g.*, Second Superseding Information, *United States v. Gary Jones*, No. 2:19-cr-20726-PDB-RSW, (E.D. Mich. Feb. 27, 2020), ECF No. 32. Because the underlying crimes are unrelated to GM or FCA, it is unclear how these individuals' concealment efforts could affect the preservation of evidence related to this case. In any event, because these individuals attempted to conceal illegal activity *from the UAW*, it strains logic to suggest that their actions shed any light on the adequacy of UAW's own preservation efforts.

3.      Third, the UAW has taken extraordinary steps to preserve any documents that were damaged in the July 2019 fire. As an initial matter, it should be noted that the fire originated on the West side of the third floor of the North Tower of Solidarity House, where the Information Systems and Public Relations Departments were located. Brien Decl. ¶ 4. Other than the email and electronic documents that had been moved to a third-party cloud-based service long before the fire, LaCour Decl. ¶ 5, most of the documents relevant to this case are stored in the GM, Chrysler, Accounting, President's, or Secretary-Treasurer's Departments. Paper records maintained in these departments were minimally affected by the fire. Brien Decl. ¶ 7. Indeed, out of the more than 1.9 million pages of documents

produced to the U.S. Attorney so far, the UAW is aware of only one document that it has reason to believe was in its custody or control but that could not be located for production since the fire. Sec. Sodko Decl. ⁋ 14.

Moreover, the UAW has taken pains to ensure that records stored in Solidarity House at the time of the fire will be available for discovery. First, the UAW sent 13,000 boxes of paper records to a professional property-restoration company for cleaning. Brien Decl. ⁋ 9. Ninety percent of those 13,000 boxes, including virtually all records belonging to the GM, Chrysler, and Accounting Departments, as well as the President's and Secretary-Treasurer's Offices, have already been returned and are available to UAW. *Id.* ⁋ 10.  As for digital information located on site, the UAW has collected over 350 hard drives and portable storage devices and is storing them at its temporary office in Southfield, Michigan. LaCour Decl. ⁋ 15. Additionally, more than 30 cell phones and tablets stored in the Information Systems Department at the time of the fire have been moved to the Union's Southfield office. LaCour Decl. ⁋ 10. In short, the UAW's efforts to mitigate the fire's effect on discovery have been entirely reasonable.[2]

4.     Finally, the UAW's ongoing cooperation in collecting and producing documents to the U.S. Attorney is strong evidence that the UAW has taken the

---

[2] Although, in July 2019, the UAW requested an extension of time to respond to discovery immediately after of the fire, Dkt. No. 57 & 57-3, the declarations submitted here establish that, as time passed, disruptions became less pronounced.

necessary steps to preserve evidence potentially relevant to GM's allegations. *See* Dkt. No. 53 at 8. GM discounts this evidence, alleging that the U.S. Attorney "has openly declared the UAW's ***lack of cooperation***." Dkt. No. 57 at 5 (citing Dkt. No. 52-4) (emphasis in original). But the article on which GM relies makes clear that the U.S. Attorney expressed no concerns regarding the UAW's response to the government's subpoenas, let alone its document-preservation efforts. Indeed, the article notes that the UAW itself "provided the evidence against Jones and Pearson to the U.S. attorney's office." Dkt. No. 52-4. Since first learning of the "Corruption Scandal," the UAW has adopted protocols designed to ensure that documents relevant to the investigation will be preserved. And the Union recently reiterated its organization-wide litigation hold in light of the subpoena served by GM, demonstrating its commitment to preserving evidence.

## II.    COURT-ORDERED PRESERVATION IS UNNECESSARY

In sum, GM has not pointed to a single, fact-based concern with UAW's current document-preservation practices to support its call for Court-ordered document-preservation measures. Moreover, the UAW has already answered most of the "questions" GM asks.[3] *Compare* Dkt. No. 57 at 6, *with* Sec. Sodko Decl.,

---

[3] The UAW has not provided identifying information on the timing of, and individuals affected by, litigation holds unrelated to the U.S. Attorney's investigation. Collecting such information would be burdensome and might risk divulging confidential litigation strategy in unrelated cases. Sec. Sodko Decl. ¶ 11.

LaCour Decl., Brien Decl., and Ganatra Decl. Because the UAW is complying with its document-preservation obligations and has now provided the information sought by GM, permitting it to take discovery into the Union's document-preservation measures would serve no legitimate purpose. *Cf.* Dkt. 57 at 5-6.

Finally, because there is no demonstrated risk that UAW will spoliate evidence, Court-ordered preservation measures are unwarranted. *See, e.g.*, *John B.*, 531 F.3d at 459 (recognizing that preservation orders generally must be premised on a demonstration that a real danger of evidence destruction exists); *FCA US LLC v. Bullock*, 329 F.R.D. 563, 568 (E.D. Mich. 2019) (rejecting request for Court-ordered preservation where movant "assert[ed] that [defendant] has done something dishonest, but offer[d] no evidence that would lead the Court to believe [defendant was] secretly withholding information."). There is no evidence that UAW has done or will do anything to destroy or conceal discoverable information in this case. Rather, all the evidence before the Court demonstrates that UAW has complied with its document-preservation obligations.

## CONCLUSION

For the forgoing reasons, Court-ordered preservation measures are unwarranted. The Court's February 18, 2020 Order staying discovery should not be disturbed, including as against nonparty UAW.

Dated:  March 17, 2020

s/ *Abigail V. Carter*
Abigail V. Carter (acarter@bredhoff.com)
Bredhoff & Kaiser P.L.L.C.
805 Fifteenth St., N.W., Suite 1000
Washington, D.C.  20005-2207
(202) 842-2600

*Counsel to Nonparty UAW*

8