UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENERAL MOTORS, LLC;
GENERAL MOTORS CO.,

    Plaintiffs

v.

FCA US LLC/ FIAT CHRYSLER
AUTOMOBILES N.V.; ALPHONS
IACOBELLI; JEROME DURDEN;
MICHAEL BROWN,

    Defendants.

_____

No. 2:19-cv-13429
Hon. Paul D. Borman
Magistrate David R. Grand

## REPLY OF ALPHONS IACOBELLI IN SUPPORT OF MOTION TO DISMISS COMPLAINT

NEDELMAN LEGAL GROUP PLLC
Michael A Nedelman (P35433)
Counsel for Defendant Alphons Iacobelli
28580 Orchard Lake Road, Suite 140
Farmington Hills, MI 48334
(248) 855-8888
mnedelman@nglegal.com
April 6, 2020

175115718.003R2

## TABLE OF CONTENTS

Index of Authorities ................................................................................................ ii

Controlling Authorities ......................................................................................... iii

A.  GM Has Not Plead "But For" Cause ............................................................ 1

B.  Lack of Proximate Cause ............................................................................... 1

C.  GM Has Not Suffered a Cognizable RICO Injury ........................................ 4

D.  GM's Claims are Barred by the Statute of Limitations ................................ 4

Conclusion ............................................................................................................ 7

# INDEX OF AUTHORITIES

*Anza v Ideal Steel Supply Corp,* 547 U.S. 451 (2006) ........................................ 1

*Ashcroft v Iqbal*, 556 U.S. 662 (2009) ................................................................. 3

*Brown v Tennessee Gas Pipeline Co*, 623 F. 2d 450 (6th Cir. 1980) .................. 5

*Hemi Group, LLC v City of New York,* 559 U.S. 1 (2010) .................................. 1

*Holmes v SIPC*, 503 U.S. 258 (1992). ................................................................ 1

*Wallace v Midwest Fin. & Mortg, Servc., Inc,* 714 F. 3d 414 (6th Cir. 2013) 1, 2

## CONTROLLING AUTHORITIES

*Holmes v SIPC*, 503 U.S. 258, 268; 112 S. Ct. 1311; 117 L. Ed. 2d 532 (1992)

Alphons Iacobelli, through his attorneys, submits the following Reply in support of his Motion to dismiss with prejudice the Complaint filed by General Motors LLC and General Motors Company (collectively "Plaintiffs" or "GM"):

A. **GM Has Not Plead "But For" Cause.** GM has failed to adequately plead "but for" causation. Despite a Complaint containing 198 paragraphs (independent of subparagraphs and 93 footnotes) and spanning 95 pages, GM's Complaint simply does not allege that "but for," "by reason of" or "in the absence of" the alleged predicate acts, it would not have been injured; indeed, each of those (according to GM, interchangeable) phrases is noticeably absent from the Complaint. While GM's claim is dependent upon pleading and proving "but for" causation, the alleged predicate acts were according to GM only to "relatedly" (not directly) harm GM (Complaint ¶55). The required direct relationship between the alleged predicate acts and GM's alleged damages therefore does not exist.

B. **Lack of Proximate Cause.** In an effort to deflect from the absence of "but for" causation, GM all but ignores the holdings of the Supreme Court in *Holmes v Sec. Inv'r Prot. Corp*, 503 U.S. 258 (1992), *Anza v Ideal Steel Supply Corp*., 547 U.S. 451 (2006) and *Hemi Group, LLC v City of New York*, 559 U.S. 1 (2010) that require a direct link between the predicate acts and the alleged injury. GM instead attempts to seek refuge in the Sixth Circuit's decision in *Wallace v Midwest Fin. & Mortg. Servs., Inc*, 714 F. 3d 414 (6th Cir. 2013) for the proposition that GM has

1

plausibly or adequately alleged proximate cause based solely upon alleged "foreseeability." Mr. Iacobelli did not, as GM asserts, "ignore" the *Wallace* decision but, in light of controlling Supreme Court precedent, did not need to distinguish *Wallace* for the reason that *Wallace* does not support GM's position. The *Wallace* plaintiff survived a proximate cause challenge because the link between the alleged fraudulent scheme to induce borrowers to agree to high interest rate loans, and the injury suffered by the *Wallace* plaintiff (one of those borrowers) was direct; as the Court noted, "we are able to trace a straight line between the alleged fraud and the asserted injury." *Id.* at 420. No such "straight line" exists in this case. Any "line" between those alleged predicate acts and the asserted injury was at best a "zig zag" starting with the alleged predicate acts, moving to alleged favorable treatment to FCA, then to the alleged "improper" selection of FCA as the 2015 "target," then to the alleged "tainted" 2015 FCA-UAW CBA negotiations, further to the independent UAW membership rejection of the initial 2015 FCA-UAW CBA contract proposal, back to further negotiations with the UAW, and finally to the UAW membership ratification of the 2015 FCA-UAW CBA, all followed by independent, controlling acts including, but not limited to, GM's negotiations with the UAW and ending with UAW membership ratification of the 2015 GM-UAW CBA.

Thus, GM has not and cannot adequately plead the requisite direct injury necessary to sufficiently plead proximate cause. GM's quotes from the relevant

2

Indictments, Informations and other sources establish that the referenced bribes were for the purpose of obtaining "benefits, concessions and advantages for FCA in the negotiation, implementation, and administration of the collective bargaining agreements between FCA and the UAW" (see, e.g., Complaint ¶¶154, ¶148). Those allegations make no mention of GM and do not provide any factual support for GM's wholly conclusory statement that "these acts were designed to and did pervert the collective bargaining process to the direct injury of GM." (Complaint ¶148). GM's conclusory and unadorned allegations are not entitled to a presumption of truth as well-pleaded allegations, and the [remaining] factual allegations do not plausibly suggest an entitlement to relief. *See Ashcroft v. Iqbal, 556 U.S. 662, 680* (2009).

Foreseeability is alone insufficient to satisfy the proximate cause requirements; and even if it were sufficient, GM has failed to plausibly plead foreseeability. While GM repeatedly cites to "various labor cost [and other] advantages" allegedly obtained by FCA for the benefit of FCA as a consequence of the alleged predicate acts, GM fails to describe how those alleged advantages, even if true, were in fact foreseeable and directly injured GM as opposed to directly benefiting FCA and only indirectly, if at all, affecting GM's subsequent, voluntary agreement with the UAW to the terms and conditions of the 2015 GM-UAW CBA. While GM claims alleged injury that "through the 2015 [FCA-UAW] CBA, FCA imposed outsized and asymmetrical costs on GM in an attempt to force a merger

3

with FCA NV" (Response p. 8, citing Complaint ¶¶ 7, 71, 82-83, 132, 134, 178), GM was not, however, a party to (or a third party beneficiary of) the 2015 FCA-UAW CBA. The 2015 FCA-UAW CBA by its express terms did not impose and could not have imposed <u>any</u> costs on GM; any costs borne by GM (to the extent such costs constitute "injury") are too remote to be the foreseeable result of bribes GM claims were intended to gain a bargaining advantage for <u>FCA</u>.

C. **<u>GM Has Not Suffered a Cognizable RICO Injury</u>.** In its Response, GM does not meaningfully refute that it has not pled a cognizable RICO injury. GM received full value for the wages paid and acknowledges that "GM is not seeking recovery for the value of services it paid for but did not receive" (GM Brief at p. 11). Having received full value for the services it paid for, any alleged "overpayment" does not constitute a legally cognizable loss sufficient to support a RICO claim. GM's attempt to generally re-label the damages claim as "labor-related costs" - which <u>are</u> the difference between what GM agreed to pay and the amount it believes it should have paid - is legally insufficient to salvage GM's claim.[1]

D. **<u>GM's Claims are Barred by the Statute of Limitations</u>.** In its Response, GM seeks to delay the commencement of the running of the statute of limitations until November 20, 2015, alleging that the clock did not start running until after

---

[1] Mr. Iacobelli does not, as FCA attempts to misconstrue his argument, assert that GM's claim for damages is solely one for a loss of market share.

4

GM's voluntary completion of its own 2015 GM-UAW negotiations and UAW membership ratification of the 2015 GM-UAW CBA. That argument improperly ignores the earlier "storm warnings" described by GM in its Complaint, that put GM on notice sufficient to start running the statute of limitations clock well before November 20, 2015.

In considering the "storm warnings," GM's own reliance upon "pattern bargaining" as the putative "link" between the alleged predicate acts and GM's alleged damages is the Achille's heel in GM's argument and fatal to maintenance of its claim. Certainly, GM cannot maintain a claim based upon an alleged "scheme" by Defendants to harm GM that is entirely dependent upon Defendants allegedly availing themselves of the UAW's public, historical commitment to and employment of "pattern bargaining" (Complaint ¶¶7, 117-121, 123-125, 134 and Response pp. 7-9), while at the same time ignoring GM's actual knowledge and belief (if its allegations are accepted as true) of the consequences (the "storm warnings") of that same "pattern bargaining" process (Complaint ¶¶117-126 and in particular ¶132). In this regard, GM's own factual allegations (which must be construed as judicial admissions[2]) provide an undisputed basis for dismissal of its Complaint as barred by the applicable four-year statute of limitations.

---

[2] *See, e.g., Brown v. Tennessee Gas Pipeline Co.*, 623 F.2d 450, 454 (6th Cir. 1980).

Even if GM was not fully apprised of the <u>extent</u> of its damages, GM was - since GM alleges that all of the material terms and conditions of the GM-UAW 2015 CBA were by reason of "pattern bargaining" dictated and/or controlled by the FCA-UAW 2015 CBA – fully aware not later than on October 22, 2015 upon ratification of the FCA-UAW 2015 CBA (Complaint ¶133)), that it had suffered damages. The four-year statute of limitations thus began to run not later than October 22, 2015 and expired on October 22, 2019, almost a month prior to institution of this action.

In an effort to avoid dismissal, GM asserts at Response p. 14 that it was not presented with "evidence suggesting the possibility of fraud" until January 2018, an assertion belied by the allegations at Complaint ¶125, admitting surprise at the UAW's selection of FCA as the "lead" (which selection GM claims allegedly "deprived" GM of the ability to control the outcome of pattern bargaining to which at Complaint ¶117-126 it claims it was subject); Complaint ¶132, admitting its own analysis of the final [October 8, 2015] FCA-UAW CBA showing that as a pattern agreement, it would cost GM more money;[3] Complaint ¶135 alleging GM's own agreement with the UAW on October 25, 2105, the terms and conditions of which –

---

[3] This allegation by GM reveals that GM certainly knew that the pattern set by the FCA-UAW CBA would result in terms and conditions of the anticipated GM-UAW CBA falling within a historical range. Armed with that knowledge (which GM will undoubtedly assert was the reason that FCA insisted that it be the "target"), GM knew of its injury and the clock was beginning in 2017 (Complaint ¶152). In the absence of any diligent inquiry into the alleged damages in 2015, GM running.

6

and the attendant economic burden - varied greatly from the economic costs GM "expected" (Complaint ¶137) and constitute GM's alleged damages. GM thus knew or should have known of the injury by a RICO violation as early as October 2015.

While admittedly aware of its alleged damages, GM admits at Complaint ¶152 to having refrained from undertaking any efforts at discovering the basis for its alleged injury until July 26, 2017, when a First Superseding Indictment was unsealed (case no. 17-cr-20406, E.D. Mich.) and publicly revealed the bribery of certain UAW officials upon which GM relies in bringing this action. Rather than diligently pursuing in 2015 the basis for the damages GM believed <u>in 2015</u> it had suffered, GM claims to have limited it activities to vaguely "monitoring" the criminal proceedings – which conduct cannot be reasonably construed as the exercise of due diligence sufficient to toll the statute of limitations period.

## **CONCLUSION**

For the reasons set forth above, Alphons Iacobelli prays that this Court grant his Motion to dismiss.

Dated:  April 6, 2020

Respectfully submitted,
NEDELMAN LEGAL GROUP PLLC
By: /s/ Michael A. Nedelman
Michael A Nedelman (P35433)
Counsel for Defendant Alphons Iacobelli
28580 Orchard Lake Road, Suite 140
Farmington Hills, MI 48334
(248) 855-8888
mnedelman@nglegal.com

UNITED STATES DISTRICT COOURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENERAL MOTORS, LLC;
GENERAL MOTORS CO.,

    Plaintiffs

v.

FCA US LLC/ FIAT CHRYSLER
AUTOMOBILES N.V.; ALPHONS
IACOBELLI; JEROME DURDEN;
MICHAEL BROWN,

    Defendants.

No. 2:19-cv-13429
Hon. Paul D. Borman
Magistrate David R. Grand

## CERTIFICATE OF SERVICE

This is to certify that on April 6, 2020, I served a copy of **Reply of Alphons Iacobelli In Support of Motion to Dismiss Complaint** on all counsel of record via the Court's ECF system.. I declare that the above statement is true to the best of my information, knowledge and belief.

    /s/ Michael A Nedelman
    Michael A. Nedelman

8