IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————————————————— x

GENERAL MOTORS LLC; GENERAL
MOTORS CO.,

      Plaintiffs,

v.

FCA US LLC; FIAT CHRYSLER
AUTOMOBILES N.V.; ALPHONS
IACOBELLI; JEROME DURDEN; MICHAEL
BROWN,

      Defendants.

—————————————————— x

No. 2:19-cv-13429

Honorable Paul D. Borman
District Court Judge

Honorable David R. Grand
Magistrate Judge

## REPLY MEMORANDUM OF LAW IN SUPPORT OF FCA US LLC'S MOTION TO DISMISS THE COMPLAINT

Thomas W. Cranmer (P25252)
Matthew P. Allen (P57914)
MILLER, CANFIELD, PADDOCK
   & STONE, PLC
840 West Long Lake Road
Suite 150
Troy, Michigan 48098-6358
Tel:  (248) 879-2000
*cranmer@millercanfield.com*
*allen@millercanfield.com*

Steven L. Holley (N.Y. 1917830)
Matthew J. Porpora (N.Y. 4402798)
Jacob E. Cohen (N.Y. 4787271)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Tel:  (212) 558-4000
*holleys@sullcrom.com*
*porporam@sullcrom.com*
*cohenja@sullcrom.com*

*Counsel for FCA US LLC*

April 8, 2020

# TABLE OF CONTENTS

*Page*

**Preliminary Statement** ........................................................... 1

**Argument** ............................................................................ 2

**I.**  **GM's RICO claims should be dismissed because GM does not plausibly allege that it suffered an injury "by reason of" FCA's alleged conduct** ........................................................... 2

    A.  GM does not adequately plead "but for" causation ........................... 2

    B.  GM does not adequately plead proximate causation ......................... 5

        1.  GM must establish that it was directly harmed, not merely that it was a foreseeable or even an intended target ........................................................................ 5

        2.  GM was not the "direct victim" of any harm caused by the alleged prohibited payments ................................. 8

        3.  All three *Holmes* factors confirm that GM's alleged harm is far too remote to support a RICO claim .............................. 10

**II.**  **GM fails to adequately allege predicate acts of "racketeering activity"** ........................................................................... 12

**III.**  **The Section 1962(b) claim should be dismissed** .................................... 13

**IV.**  **GM fails to state a RICO conspiracy claim** ........................................... 14

**V.**  **RICO's four-year statute of limitations bars GM's claims premised on conduct occurring before November 20, 2015** ................. 15

**VI.**  **The state law claims should be dismissed** ............................................. 17

**Conclusion** ............................................................................ 17

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Aces High Coal Sales, Inc.* v. *Cmty. Bank & Tr.*,
   768 F. App'x 446 (6th Cir. 2019) ...................................................... 14

*Air Line Pilots Ass'n* v. *O'Neill*,
   499 U.S. 65 (1991) .......................................................................... 4

*Anza* v. *Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) ................................................................. *passim*

*Bachi-Reffitt* v. *Reffitt*,
   ___ F. App'x ___, 2020 WL 548265 (6th Cir. Feb. 4, 2020) ............................ 9

*Baisch* v. *Gallina*,
   346 F.3d 366 (2d Cir. 2003) ............................................................. 6

*Buttry* v. *Gen. Signal Corp.*,
   68 F.3d 1488 (2d Cir. 1995) ............................................................. 16

*Cardenas* v. *Irish Constr.*,
   2010 WL 11639835 (N.D. Cal. July 27, 2010) ............................................. 6

*City of Cleveland* v. *Ameriquest Mortg. Sec., Inc.*,
   615 F.3d 496 (6th Cir. 2010) ...................................................... 10, 11

*Cox* v. *Adm'r U.S. Steel*,
   17 F.3d 1386 (11th Cir. 1994) ........................................................... 8

*Crown Chevrolet* v. *Gen. Motors, LLC*,
   637 F. App'x 446 (9th Cir. 2016) ....................................................... 15

*DDR Const. Servs., Inc.* v. *Siemens Indus., Inc.*,
   770 F. Supp. 2d 627 (S.D.N.Y. 2011) ..................................................... 6

*DeShetler* v. *FCA US, LLC*,
   790 F. App'x 664 (6th Cir. 2019) ....................................................... 15

*Doe* v. *Trs. of Boston Coll.*,
   942 F.3d 527 (1st Cir. 2019) ........................................................... 17

*Empire Merchs., LLC* v. *Reliable Churchill LLLP*,
902 F.3d 132 (2d Cir. 2018) ............................................................. 2, 6, 10, 11

*Empress Casino Joliet Corp.* v. *Johnston*,
763 F.3d 723 (7th Cir. 2014) ................................................................ 12

*Hemi Grp., LLC* v. *City of N.Y.*,
559 U.S. 1 (2010) ................................................................... 1, 5, 6, 7

*Holmes* v. *Sec. Inv'r Prot. Corp.*,
503 U.S. 258 (1992) ................................................................ 5, 10, 12

*In re ClassicStar Mare Lease Litig.*,
727 F.3d 473 (6th Cir. 2013) .................................................................. 6

*Keefe* v. *Bahama Cruise Line, Inc.*,
867 F.2d 1318 (11th Cir. 1989) .............................................................. 16

*Klehr* v. *A.O. Smith Corp.*,
521 U.S. 179 (1997) ............................................................................ 16

*Kloss* v. *RBS Citizens, N.A.*,
996 F. Supp. 2d 574 (E.D. Mich. 2014) .................................................... 14

*MSP Recovery Claims, Series, LLC* v. *Sanofi Aventis U.S. LLC*,
2019 WL 1418129 (D.N.J. Mar. 29, 2019) .................................................. 11

*New Castle Cty.* v. *Halliburton NUS Corp.*,
111 F.3d 1116 (3d Cir. 1997) ................................................................ 16

*Newspaper Guild of Salem* v. *Ottaway Newspapers, Inc.*,
79 F.3d 1273 (1st Cir. 1996) ................................................................. 13

*Norton-Children's Hosps., Inc.* v. *James E. Smith & Sons, Inc.*,
658 F.2d 440 (6th Cir. 1981) ............................................................. 15, 16

*Oceanic Expl. Co.* v. *Phillips Petroleum Co.*,
352 F. App'x 945 (5th Cir. 2009) ............................................................. 4

*Perry* v. *Am. Tobacco Co.*,
324 F.3d 845 (6th Cir. 2003) ............................................................... 5, 7

*Primary Ins. Agency Grp., LLC* v. *Nofar*,
    2015 WL 1227767 (Mich. Ct. App. Mar. 17, 2015) ......................................... 17

*Qiu* v. *Univ. of Cincinnati*,
    ___ F. App'x ___, 2020 WL 634036 (6th Cir. Feb. 11, 2020) .......................... 3

*Ray* v. *Spirit Airlines, Inc.*,
    836 F.3d 1340 (11th Cir. 2016) .......................................................................... 5

*Rotella* v. *Wood*,
    528 U.S. 549 (2000) .................................................................................... 15, 16

*San Diego Bldg. Trades Council* v. *Garmon*,
    359 U.S. 236 (1959) .................................................................................... 12, 13

*Straser* v. *City of Athens*,
    951 F.3d 424 (6th Cir. 2020) ............................................................................. 13

*Trollinger* v. *Tyson Foods, Inc.*,
    370 F.3d 602 (6th Cir. 2004) ............................................................................. 12

*United States* v. *Petlechkov*,
    922 F.3d 762 (6th Cir. 2019) ............................................................................. 13

*Vemco, Inc.* v. *Camardella*,
    23 F.3d 129 (6th Cir. 1994) ................................................................................. 9

*Wallace* v. *Midwest Fin. & Mortg. Servs. Inc.*,
    714 F.3d 414 (6th Cir. 2013) ........................................................................... 6, 7

*Willie McCormick & Assocs.* v. *Lakeshore Eng'g Servs., Inc.*,
    2015 WL 5093785 (E.D. Mich. Aug. 28, 2015) ................................................ 7

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................... 14

**Other Authority**

Hon. Jed S. Rakoff & Howard W. Goldstein,
    RICO: Civ. & Crim. Law & Strategy § 1.06 (rev. ed. 2019) ...................... 13

## PRELIMINARY STATEMENT

GM's Opposition confirms that the Complaint should be dismissed with prejudice.[1]  Most fundamentally, GM's causation arguments fail as a matter of law. GM parrots arguments made by the dissenters in *Hemi Grp., LLC* v. *City of N.Y.*, 559 U.S. 1 (2010), and *Anza* v. *Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), in an effort to transform RICO's direct injury requirement into a foreseeability test.  As a fallback, GM asserts repeatedly that it was "directly harmed" by the alleged prohibited payments (Opp. 2, 3, 10-15), but such assertions do not change the fact that, under GM's own allegations, any harm it could have incurred was, at most, an indirect byproduct of alleged prohibited payments that harmed the "UAW membership" in the first step, and then harmed the IRS in the second step.  (Compl. ¶¶ 65-66, 71.)  Causation inquiries under RICO, however, are not to go "beyond the first step" in the causal chain.  *Hemi*, 559 U.S. at 10.  GM cannot circumvent RICO's direct injury requirement by claiming, as it does, that FCA's ultimate goal was "to gain a competitive advantage over [GM]."  *Anza*, 547 U.S. at 460.

Although the Court could dismiss the RICO claims on causation grounds alone (and decline to exercise supplemental jurisdiction over GM's state law claims), the Complaint should be dismissed for numerous other reasons, including (i) the predicate acts are subject to exclusive NLRB jurisdiction, (ii) GM fails to allege that

---

[1] Defined terms have the same meaning as in FCA's Opening Brief.

FCA acquired an interest in or control of the UAW under Section 1962(b), (iii) the claims for injuries occurring before November 20, 2015 are time-barred, and (iv) GM fails to adequately allege a RICO conspiracy or any state law claims.

## ARGUMENT

I.   **GM's RICO claims should be dismissed because GM does not plausibly allege that it suffered an injury "by reason of" FCA's alleged conduct.**

GM does not deny that civil RICO claims are subject to heightened scrutiny (*see* Opening Br. 9-11), and that courts evaluate RICO "claims brought by economic competitors" with even greater "skepticism" because "such claims, 'if left unchecked, could blur the line between RICO and the antitrust laws.'" *Empire Merchs., LLC* v. *Reliable Churchill LLLP*, 902 F.3d 132, 144 (2d Cir. 2018). Nothing in GM's Opposition, however, remotely supports the notion that "$1.5 million" in alleged prohibited payments directly inflicted "billions of dollars of damages on GM" in the form of higher labor costs.  (Compl. ¶¶ 5, 178.)

### A.   **GM does not adequately plead "but for" causation.**

GM contends that, as a result of the alleged prohibited payments, FCA somehow "imposed a cost structure on GM" that resulted in GM having average labor costs approximately $8 per hour higher than FCA's before 2015.  (Opp. 1.) But GM does not deny that it was the "lead" in negotiating the 2011 CBA, so GM bears substantial responsibility for the outcome of those negotiations with the UAW, which FCA was pressured to accept as a result of pattern bargaining.  (*See* Compl.

¶¶ 119, 123.)  Nor does GM deny that many factors other than the alleged prohibited payments might have contributed to GM's higher labor costs.  (*See* Opp. 15.)  There are far too many factors in play—including the 2009 bankruptcies of both GM and Chrysler LLC, in which GM received tens of billions of dollars in government financing it was never required to repay, whereas the entity that became FCA (which acquired substantially all of Chrysler LLC's assets), was required to take high-interest government loans—to credit GM's bald assertion that the alleged prohibited payments were the "but for" cause of GM's higher labor costs prior to 2015.

With regard to the 2015 CBA, GM alleges that its "overly rich" terms were "a product of bribery" (Opp. 9), but the Complaint provides no factual support for the assertion that the 2015 CBA was "structured" by FCA "to force unanticipated higher costs on GM" (Compl. ¶ 134).  At most, GM speculates that the alleged prohibited payments allowed FCA to become the "lead" in negotiating the 2015 CBA, and that all of the alleged harm to GM flowed from that.  (Opp. 1, 6, 9.)  But "a motion to dismiss cannot be defeated by mere speculation on the part of a plaintiff."  *Qiu* v. *Univ. of Cincinnati*, ___ F. App'x ___, 2020 WL 634036, at *5 (6th Cir. Feb. 11, 2020).  This is particularly true where that speculation—that FCA had to bribe UAW officials to accept better terms from FCA—makes no economic sense.

While deriding it as a "closing argument" (Opp. 9), GM also fails to meet the point that the alleged prohibited payments would not have been necessary to entice

the UAW to select FCA as the lead in negotiating the 2015 CBA if it were true that the UAW knew FCA would agree to the most union-friendly CBA in history, which the UAW could then use as a pattern for negotiations with GM and Ford.  Indeed, if the UAW believed it could negotiate the best deal with FCA, it had every reason— likely a legal duty—to select FCA as the lead in CBA negotiations, irrespective of whether FCA made prohibited payments to the UAW.  *See Air Line Pilots Ass'n* v. *O'Neill*, 499 U.S. 65, 74 (1991) (discussing a union's "duty of fair representation"). Thus, as in *Anza*, the UAW's selection of FCA as the lead for negotiations "in no sense required it" to accept any alleged prohibited payments from FCA.  547 U.S. at 451; *see Oceanic Expl. Co.* v. *Phillips Petroleum Co.*, 352 F. App'x 945, 952 (5th Cir. 2009) ("Because Oceanic fails to plead facts plausibly demonstrating that it would have had an opportunity to replace ConocoPhillips in the Timor Gap in the absence of bribery, we conclude that the causal link is 'overly attenuated.'").  Nor does GM explain why "weaken[ing]" GM (Opp. 10) would make GM any more amenable to merging with FCA (much less make GM an attractive merger partner for FCA), as opposed to stiffening GM's resolve to reject such an idea, as it had already done once in April 2015 (Compl. ¶ 102).

Even accepting GM's theory, using the alleged prohibited payments to induce the UAW to select FCA as the lead in negotiating the 2015 CBA is many steps removed from any purported injury to GM.  For example, the Opposition

conveniently ignores that the original version of FCA's 2015 CBA was rejected by UAW members, requiring its terms to be sweetened by FCA. (*Compare* Opp. 6 *with* Compl. ¶ 131.) GM's ability to craft a story that begins with the alleged prohibited payments and ends with a claimed injury to GM does not transform GM's alleged injuries into direct ones. RICO does not authorize plaintiffs to "pursue every human act to its most remote consequences; 'for want of a nail, a kingdom was lost' is a commentary on fate, not the statement of a major cause of action against a blacksmith." *Holmes* v. *Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 287 (1992) (Scalia, J., concurring); *see Hemi*, 559 U.S. at 9 (no "attenuated" causation theories).

## B.   GM does not adequately plead proximate causation.

### 1.   GM must establish that it was directly harmed, not merely that it was a foreseeable or even an intended target.

GM claims that "foreseeability" is the test for proximate causation under RICO (Opp. 11-12), but that is wrong. "[T]he fact that an injury is reasonably foreseeable is not sufficient to establish proximate cause in a RICO action—the injury must be direct." *Ray* v. *Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016). As the Sixth Circuit noted in *Perry* v. *Am. Tobacco Co.*, 324 F.3d 845, 850 (6th Cir. 2003), foreseeability is "distinct from the requirement of direct injury" under RICO. The Supreme Court's decision in *Hemi* could not be clearer on this point. After noting that "[t]he dissent would have RICO's proximate cause requirement turn on foreseeability," the Supreme Court explained that "in the RICO

context, the focus is on the directness of the relationship between the conduct and the harm." *Hemi*, 559 U.S. at 12.  Under that standard, a RICO plaintiff's alleged injury must not go "beyond the first step" in the causal chain.  *Id.* at 10.[2]

None of the cases GM relies on for its "foreseeability" test involved RICO's directness of injury requirement.  Those cases address a separate issue of no relevance here, namely, a plaintiff's reliance on an allegedly fraudulent statement. For example, in *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473 (6th Cir. 2013), plaintiffs were duped by defendants into making certain investments.  There was no question that the plaintiffs were directly injured—they collectively invested $90 million and incurred losses totaling more than $16 million.  *Id.* at 482.  Instead, defendants argued unsuccessfully that "Plaintiffs were well-aware of various aspects of the Mare Lease Program fraud," and thus "Defendants' conduct could not have been a 'substantial and foreseeable cause' of Plaintiffs' losses."  *Id.* at 487.

Likewise, in *Wallace* v. *Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414 (6th Cir. 2013), defendants "fraudulently inflated an appraisal of [plaintiff's] home" as

---

[2] GM repeatedly cites *Baisch* v. *Gallina*, 346 F.3d 366, 375 (2d Cir. 2003) and other pre-*Anza* Second Circuit and Ninth Circuit decisions for the proposition that persons other than the "primary" victim may sue under RICO.  (Opp. 12-13, 17, 20.)  As other courts have recognized, those decisions were "overruled by *Hemi*."  *DDR Const. Servs., Inc.* v. *Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 654 (S.D.N.Y. 2011); *see generally Empire Merchs.*, 902 F.3d 132 (discussed in Opening Brief); *Cardenas* v. *Irish Constr.*, 2010 WL 11639835, at *4 (N.D. Cal. July 27, 2010) (noting that the Ninth Circuit decision GM cites has been "superseded by *Anza*").

part of a "scheme to push him into a high-cost, adjustable-rate mortgage." *Id.* at 416. The directness of plaintiff's injury was not seriously at issue—defendants persuaded plaintiff to take an expensive mortgage that pushed him into bankruptcy.[3] The question was whether plaintiff had relied on the inflated appraisal in deciding whether "to enter into the [mortgage] at issue." *Id.* at 420.

GM also is wrong that its purported injuries satisfy the directness requirement under RICO because it "was the 'intended target' of Defendants' scheme." (Opp. 18.) The Sixth Circuit has expressly "rejected the argument that the intentional nature of plaintiffs' claims alters the remoteness inquiry," holding that "specific intent to harm does not magically create standing or cause . . . injuries to be direct." *Perry*, 324 F.3d at 850. Other courts have rejected it too. *See* Opening Br. 19.

Lastly, GM's policy argument that RICO is a "remedial" statute that should be "liberally construed" grants no license to ignore the direct injury requirement or to rely on cases predating *Hemi* and *Anza*. (Opp. 8.) The Supreme Court made clear in *Hemi* that RICO's focus is "on the directness of the relationship between the

---

[3] The Sixth Circuit noted that the district court held that the mortgage lender, who was also a defendant in the case, was more directly injured because it would incur a loss if plaintiff defaulted on the loan. *Id.* at 421. That puts the chain of causation backwards: the lender incurred a loss only after the fraudulently induced mortgage "tipped [the plaintiff] into bankruptcy," making him the most immediate victim. *Id.* at 422. Another case relied on by GM is distinguishable for the same reason. *See Willie McCormick & Assocs.* v. *Lakeshore Eng'g Servs., Inc.*, 2015 WL 5093785, at *5 (E.D. Mich. Aug. 28, 2015) (harm to third party "contingent, in part, upon the harm suffered by *Plaintiff*").

conduct and the harm," and that the concept of foreseeability is essentially irrelevant. 559 U.S. at 12.

### 2.     GM was not the "direct victim" of any harm caused by the alleged prohibited payments.

Unable to dodge the direct injury requirement of RICO, GM seeks to establish proximate causation by repeating the mantra that it was "directly harmed." (Opp. 2, 3, 10-15.) But saying so does not make it so.

GM's allegations make clear that any harm it incurred was third in line behind rank-and-file UAW members and the IRS. GM alleges that "[i]n return for its bribes, FCA obtained labor cost advantages from the UAW while ensuring that such advantages were denied to GM." (Opp. 5.) On this theory, any alleged harm was incurred first and foremost by FCA employees, who received lower wages and fewer benefits than they otherwise would have. (*See* Compl. ¶¶ 77-80.) GM tries to excise harm to FCA employees from the equation by focusing on the allegation that the labor cost advantages allegedly conferred on FCA were "denied to GM" by the UAW, thereby causing GM to incur "higher costs" relative to FCA. (Opp. 5, 13-14.) But the Complaint itself alleges that labor cost advantages purportedly enjoyed by FCA were achieved "without regard to the interests of UAW membership" (Compl. ¶ 71), an allegation GM cannot walk away from now.[4]

---

[4] *Cox* v. *Adm'r U.S. Steel*, 17 F.3d 1386 (11th Cir. 1994), does not assist GM (Opp.

To the extent GM contends the alleged prohibited payments were made not to secure advantages for FCA itself (with resulting harm to FCA employees), but were instead made to induce the UAW to drive a harder bargain with GM, such as in the 2015 CBA, that theory fails for two reasons. *First*, it is inconsistent with what GM says in the first sentence of its Opposition, *i.e.*, "Defendants successfully bribed UAW officials to obtain 'benefits, concessions, and advantages' *for FCA*." (Opp. 1 (emphasis added).) *Second*, if the purpose of the alleged RICO scheme was to injure GM and no one else by imposing higher labor costs on GM, then the Complaint must be dismissed for a different reason: "a single scheme targeting a single victim" does not plead "an actionable 'pattern of racketeering activity.'" *Bachi-Reffitt* v. *Reffitt*, ___ F. App'x ___, 2020 WL 548265, at *4 (6th Cir. Feb. 4, 2020); *see Vemco, Inc.* v. *Camardella*, 23 F.3d 129, 135 (6th Cir. 1994) (no RICO liability where there was a "single victim and a single scheme for a single purpose").

Even if GM could show that its alleged injuries were not contingent on harm to FCA employees, GM's RICO claims still fail because the IRS was also a more immediate victim than GM. It is irrelevant that "GM is not suing to recover for

---

16), as the question in that case was whether a triable issue existed on the issue of whether a union made concessions to an employer because of bribes or instead because of "prevailing economic conditions." *Id.* at 1399. *Cox* is notable, however, for the fact that union members—and not a competitor of the employer—were found to be the proper RICO plaintiffs to pursue a claim that an employer bribed a union during negotiation of a collective bargaining agreement.

Defendants' tax fraud on the IRS" or that its alleged injuries are "distinct from the harm to the IRS." (Opp. 13.) What matters is that the IRS, not GM, was the direct victim of the alleged mail and wire fraud that serves as the RICO predicate acts (Compl. ¶¶ 65-66), just as in *Anza*, 547 U.S. at 460. That is why the Second Circuit rejected this exact argument in *Empire Merchants*, holding that the plaintiff's "unique" or "distinct" injuries from those incurred by the New York tax authority had no bearing on whether the plaintiff's alleged injury "was *directly caused* by the defendants' racketeering." 902 F.3d at 145-46.

Simply put, GM's "theory of causation thus requires us to 'go beyond the first step' in the causal chain." *Id.* at 142. That alone dooms GM's RICO claims.

### 3.   All three *Holmes* factors confirm that GM's alleged harm is far too remote to support a RICO claim.

GM's cursory effort to argue that its causation theory is compatible with the *Holmes* factors reinforces the conclusion that its alleged injuries are not direct.

*First*, GM claims that it does not matter that more direct victims have already sued. (Opp. 20.) But that argument just repackages Justice Thomas's dissent in *Anza*—"[t]he mere fact that New York is a direct victim . . . does not preclude Ideal's claim that it too is a direct victim," 547 U.S. at 465 (Thomas, J., dissenting)—and relies on overruled Second Circuit and Ninth Circuit decisions. (Opp. 20; *supra* n.2.) As courts since *Anza* have held time and again, a RICO claim fails if "more immediate victims can sue." *City of Cleveland* v. *Ameriquest Mortg. Sec., Inc.*, 615

F.3d 496, 506 (6th Cir. 2010); *see* Opening Br. 21-22.

*Second*, GM does not explain why its damages are non-speculative; instead, GM says it "intends to trace the higher costs imposed on it" in some unspecified way "depending on what discovery reveals." (Opp. 18-19.) There are myriad reasons why GM's labor costs were what they were over the time period at issue, and kicking the can down the road on damages provides no assurance that "intricate, uncertain inquiries" will not "overrun[]" the litigation. *Anza*, 547 U.S. at 460. In fact, GM's acknowledgement that "causes other than the bribery scheme may have contributed to GM's higher costs" (Opp. 15) is proof positive that computing damages will not be a "straightforward" exercise. *Empire Merchants*, 902 F.3d at 143-44. Nor can GM avoid dismissal by arguing that any inquiry into the speculative nature of its alleged damages is "inappropriate at the motion to dismiss stage." (Opp. 19.) To the contrary, the Supreme Court held in *Anza* that such an inquiry is required. 547 U.S. at 459-60; *see Empire Merchs.*, 902 F.3d at 143-44 (dismissing complaint); *Cleveland*, 615 F.3d at 506 (same).

*Third*, GM asserts there is no risk of multiple recoveries because GM *itself* "is not seeking to recover damages for others' distinct harms." (Opp. 19.) But that misses the issue entirely. There is a risk of multiple recoveries because under GM's own theory, other parties that purported suffered indirect injuries—and the Complaint identifies many of them (Compl. ¶ 12)—could sue and "potentially

recover from [FCA] as well." *MSP Recovery Claims, Series, LLC* v. *Sanofi Aventis U.S. LLC*, 2019 WL 1418129, at \*15 (D.N.J. Mar. 29, 2019).

Accordingly, none of the *Holmes* factors supports GM, unlike in *Empress Casino Joliet Corp.* v. *Johnston*, 763 F.3d 723 (7th Cir. 2014), a case on which GM relies.  (Opp. 17.)  There, casinos sued horse racetrack owners for bribing Illinois Governor Rod Blagojevich to impose a tax on five in-state casinos, with the proceeds of the tax placed "into a trust for the benefit of the horseracing industry."  *Empress Casino*, 763 F.3d at 725.  Unlike here, there were no other victims (the tax injured only the five casinos and no one else) and the harm was direct and non-speculative (no money went to the state, and the five casinos were harmed "to the tune of 3% of their revenue," which was "easily measured").  *Id.* at 733-34.

## II.    GM fails to adequately allege predicate acts of "racketeering activity."

All of GM's alleged predicate offenses are subject to exclusive NLRB jurisdiction.  The Sixth Circuit has squarely held that a federal court may "adjudicat[e] a RICO action based upon conduct that is arguably protected or prohibited by the NLRA if under the circumstances (1) RICO operates as an independent federal remedy and (2) the labor questions in the case amount to no more than collateral issues." *Trollinger* v. *Tyson Foods, Inc.*, 370 F.3d 602, 610 (6th Cir. 2004).[5]  Although GM thinks courts in other circuits have adopted a better rule

---

[5] GM's argument that it is alleging "bribes" as opposed to "'bad faith' within the

(Opp. 22-23), the Sixth Circuit "has already settled on a standard," *Straser* v. *City of Athens*, 951 F.3d 424, 427 (6th Cir. 2020), for applying the *Garmon* rule in the RICO context, and GM's claims are precluded under that standard.

GM also cannot plead a mail or wire fraud claim against FCA by asserting that the Individual Defendants "concealed" the "bribery scheme." (Opp. 24-26.) To state a mail or wire fraud claim against FCA, the Complaint must allege that FCA made "a material misrepresentation." *United States* v. *Petlechkov*, 922 F.3d 762, 766 (6th Cir. 2019). GM has not done so.

## III. The Section 1962(b) claim should be dismissed.

GM is correct that "formal" control—*i.e.*, actual acquisition of a controlling share of the enterprise's stock—is not required under Section 1962(b). (Opp. 3, 26.) But the statute does require, as the leading RICO treatise explains, "domination" over the enterprise—a requirement *akin to* the "power that an owner of 51% or more of an entity would normally enjoy," and does not encompass a defendant's "mere influence[]" over an enterprise. RICO: CIV. & CRIM. LAW & STRATEGY § 1.06(2)

---

meaning of the NLRA" misses the point. (Opp. 21, 23 n.6.) Under the *Garmon* rule, the NLRB has exclusive jurisdiction over any conduct that "arguably" constitutes an unfair labor practice, *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236, 245 (1959), and a claim premised on "conduct during [CBA] negotiations"—which includes the making of prohibited payments—"fall[s] squarely within the NLRB's primary jurisdiction." *Newspaper Guild of Salem* v. *Ottaway Newspapers, Inc.*, 79 F.3d 1273, 1285 (1st Cir. 1996).

(rev. ed. 2019).  GM, which expressly claims only that FCA had an "ability to influence" certain UAW decisions (Opp. 27), has not met that standard.[6]

The Section 1962(b) claim should also be dismissed because GM does not "allege an 'acquisition or maintenance' injury" that is "separate and apart from the injury suffered as a result of the predicate acts of racketeering activity."  *Aces High Coal Sales, Inc.* v. *Cmty. Bank & Tr.*, 768 F. App'x 446, 458 (6th Cir. 2019).  The fact that Rule 8 of the Federal Rules of Civil Procedure permits plaintiffs to plead "overlapping" or "inconsistent" legal theories (Opp. 29) does not override RICO's requirement that the alleged "acquisition or maintenance" injury must be "separate and apart" from whatever injury GM allegedly incurred from the predicate acts. *Aces High*, 768 F. App'x at 458 (affirming dismissal).

## IV.   GM fails to state a RICO conspiracy claim.

GM contends its conspiracy claim is viable because the conspiracy includes "non-FCA co-conspirators."  (Opp. 30.)  But the Complaint limits the conspiracy to FCA and its former employees.[7]  "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Kloss* v. *RBS Citizens,*

---

[6] The purported "script" to which GM refers (Opp. 27) relates to FCA's purchase of securities from a UAW medical trust, which GM expressly states is not part of its claims and was "not impacted by the bribery."  (Compl. ¶ 93 n.45.)

[7] *E.g.*, "Defendants further conspired . . ." (Compl. ¶ 182); "All Defendants have participated as co-conspirators . . ." (*id.* ¶ 183).

*N.A.*, 996 F. Supp. 2d 574, 584 n.2 (E.D. Mich. 2014).

**V.     RICO's four-year statute of limitations bars GM's claims premised on conduct occurring before November 20, 2015.**

As an initial matter, it is incorrect that courts may never dismiss a Complaint on statute of limitations grounds (Opp. 31), as the Sixth Circuit recently confirmed in *DeShetler* v. *FCA US, LLC*, 790 F. App'x 664, 669 (6th Cir. 2019) (affirming dismissal because "Plaintiffs' claims are time-barred").

Moreover, the Supreme Court has rejected GM's contention that RICO's four-year statute of limitations does not start to run until the plaintiff "discover[s] the fraudulent scheme." (Opp. 33-35.) The Supreme Court "ha[s] been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella* v. *Wood*, 528 U.S. 549, 555 (2000). GM successfully argued this exact same point in another case. *See Crown Chevrolet* v. *Gen. Motors, LLC*, 637 F. App'x 446 (9th Cir. 2016) (discussed in Opening Br. 37). Here, the limitations period accrued when GM reasonably discovered it had been injured, which GM itself concedes occurred by "early 2015" at the latest. (Opp. 1.)

Lastly, GM is not entitled to tolling based on fraudulent concealment because GM sat on its hands for more than two years after the initial plea agreements before bringing this action. GM hangs its hat on a 40-year-old antitrust case holding that upon discovery of a fraudulently concealed claim, the four-year limitations period starts afresh. *Norton-Children's Hosps., Inc.* v. *James E. Smith & Sons, Inc.*, 658

F.2d 440 (6th Cir. 1981).  But the reasoning of *Norton* has not withstood the test of time.  *First*, the court relied on the fact that "no reported case" at that time had held that plaintiffs get only a reasonable time to file their complaint after discovering their claim, *id.* at 445, which is no longer true.[8]  *Second*, the court justified its rule by stating that it could "see no policy reason for not giving a plaintiff . . . the full four years to file after he has or should have discovered his cause of action."  *Id.*  The Supreme Court has since explained that the rule adopted by *Norton* "would undercut every single policy" underlying RICO.  *Rotella*, 528 U.S. at 558.  In particular, because "the object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, 'private attorneys general,' dedicated to eliminating racketeering activity," the limitations period should be construed to "encourag[e] prompt litigation to combat racketeering."  *Id.* at 557-58 & n.3.  "The provision for treble damages is accordingly justified by the expected benefit of suppressing racketeering activity, an object pursued the sooner the better."  *Id.* at 558.  Put differently, the central purpose of authorizing civil RICO claims is to "reward[] the swift who undertake litigation in the public good."  *Id.* at 559; *see also Klehr* v. *A.O. Smith Corp.*, 521 U.S. 179, 195-97 (1997) (noting same).  GM was not swift.

---

[8] *See New Castle Cty.* v. *Halliburton NUS Corp.*, 111 F.3d 1116, 1126 n.11 (3d Cir. 1997) (plaintiff "did not bring its suit within a reasonable period" after discovering defendant's misconduct); *Keefe* v. *Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1325-26 (11th Cir. 1989) (same); *Buttry* v. *Gen. Signal Corp.*, 68 F.3d 1488, 1494 (2d Cir. 1995) (same).

## VI.   The state law claims should be dismissed.

Tellingly, GM does not cite a single unfair competition case arising outside the product confusion or theft of trade secret context.  Although the unpublished intermediate state court decision GM cites suggests that unfair competition is a "broad and flexible doctrine," the unfair competition claim in that case was dismissed, with the court declining to extend the doctrine to alleged "wrongful solicitation of [a former employer's] clients."  *Primary Ins. Agency Grp., LLC* v. *Nofar*, 2015 WL 1227767, at *5-6 (Mich. Ct. App. Mar. 17, 2015).  Federal courts should not "'blaze new and unprecedented jurisprudential trails' as to state law." *Doe* v. *Trs. of Boston Coll.*, 942 F.3d 527, 535 (1st Cir. 2019).  The state law claims fail for the additional reasons discussed in FCA's Opening Brief.

### CONCLUSION

The Court should dismiss the Complaint with prejudice.

April 8, 2020                                     Respectfully submitted,

                                                 */s/ Steven L. Holley*
                                                 Steven L. Holley (N.Y. 1917830)
Thomas W. Cranmer (P25252)                       
Matthew P. Allen (P57914)                        Matthew J. Porpora (N.Y. 4402798)
MILLER, CANFIELD, PADDOCK                         Jacob E. Cohen (N.Y. 4787271)
    & STONE, PLC                                  SULLIVAN & CROMWELL LLP

*Counsel for FCA US LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: None.

Respectfully submitted,

*/s/ Steven L. Holley*
Steven L. Holley (N.Y. 1917830)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Tel: (212) 558-4000
*holleys@sullcrom.com*

*Counsel for FCA US LLC*

April 8, 2020