IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————————— x

GENERAL MOTORS LLC; GENERAL MOTORS CO.,

      Plaintiffs,

v.

FCA US LLC; FIAT CHRYSLER AUTOMOBILES N.V.; ALPHONS IACOBELLI; JEROME DURDEN; MICHAEL BROWN,

      Defendants.

———————————————— x

No. 2:19-cv-13429

Honorable Paul D. Borman
District Court Judge

Honorable David R. Grand
Magistrate Judge

## FCA DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT

Thomas W. Cranmer (P25252)
Matthew P. Allen (P57914)
MILLER, CANFIELD, PADDOCK
   & STONE, PLC
840 West Long Lake Road
Suite 150
Troy, Michigan 48098-6358
Tel:  (248) 879-2000
*cranmer@millercanfield.com*
*allen@millercanfield.com*

Steven L. Holley (N.Y. 1917830)
Matthew J. Porpora (N.Y. 4402798)
Jacob E. Cohen (N.Y. 4787271)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Tel:  (212) 558-4000
*holleys@sullcrom.com*
*porporam@sullcrom.com*
*cohenja@sullcrom.com*

*Counsel for FCA US LLC and Fiat Chrysler Automobiles N.V.*

August 10, 2020

# TABLE OF CONTENTS

*Page*

**Preliminary Statement** ............................................................................ 1

**Argument** ................................................................................................ 6

**I.    The Court should deny GM's request for reconsideration of this Court's correct application of RICO's direct causation standard** ......... 7

    A.   Rehashing previously rejected arguments is not grounds for altering or amending a judgment ......................................... 8

    B.   This Court correctly applied the standard for pleading causation under RICO ....................................................... 9

**II.   GM was not entitled to an advisory opinion from this Court as to how to overcome the numerous deficiencies in its Complaint** .............. 12

**III.  GM's alleged "new evidence" is wild conjecture and does nothing to cure the deficiencies the Court identified in dismissing the Complaint** ............................................................................... 14

    A.   GM's "new evidence" is nothing but conclusory speculation .......... 14

    B.   GM's "new evidence," even if considered, would not "clearly" lead to a "different result" ............................................... 18

**Conclusion** ............................................................................................ 21

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*16630 Southfield Ltd. P'ship* v. *Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) ................................................................ 6, 16, 17

*Anza* v. *Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) .................................................................... *passim*

*Arnold* v. *Alphatec Spine, Inc.*,
  2014 WL 2896838 (S.D. Ohio June 26, 2014) .......................................... 14, 15

*Bachi-Reffitt* v. *Reffitt*,
  802 F. App'x 913 (6th Cir. 2020) ........................................................ 6, 19, 20

*Bledsoe* v. *Comm. Health Sys., Inc.*,
  342 F.3d 634 (6th Cir. 2003) .............................................................. 13, 14

*Bridge* v. *Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) ............................................................................ 8

*Bunn* v. *Navistar, Inc.*,
  797 F. App'x 247 (6th Cir. 2020) ...................................................... 13

*Carriuolo* v. *Gen. Motors Co.*,
  823 F.3d 977 (11th Cir. 2016) .......................................................... 3

*City of Cleveland* v. *Ameriquest Mortg. Sec., Inc.*,
  615 F.3d 496 (6th Cir. 2010) .......................................................... 11

*Clark* v. *United States*,
  764 F.3d 653 (6th Cir. 2014) ............................................................ 7

*Davis* v. *Prof'l Reps. Org.*,
  666 F. App'x 433 (6th Cir. 2016) .................................................. 5, 14, 18

*Empire Merchs., LLC* v. *Reliable Churchill LLLP*,
  902 F.3d 132 (2d Cir. 2018) ............................................................ 9, 18

*Empress Casino Joliet Corp.* v. *Johnston*,
  763 F.3d. 723 (7th Cir. 2014) .......................................................... 8

*Energy Conversion Devices Liquidation Tr.* v. *Trina Solar Ltd.*,
    833 F.3d 680 (6th Cir. 2016) ..................................................................... 13, 14

*Gen. Motors LLC* v. *FCA US LLC*,
    2020 WL 3833058 (E.D. Mich. July 8, 2020) ........................................... 10, 19

*Graham* v. *Fearon*,
    721 F. App'x 429 (6th Cir. 2018) ....................................................................... 12

*Hemi Grp., LLC* v. *City of N.Y.*,
    559 U.S. 1 (2010) ................................................................................ *passim*

*Hernandez* v. *City of Saginaw*,
    2013 WL 4052632 (E.D. Mich. Aug. 12, 2013) .................................................. 7

*Higginbotham* v. *Baxter Int'l, Inc.*,
    495 F.3d 753 (7th Cir. 2007) ............................................................................. 15

*Holmes* v. *Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992) ........................................................................................... 19

*Jones* v. *Nat. Essentials, Inc.*,
    740 F. App'x 489 (6th Cir. 2018) ........................................................................ 8

*Leisure Caviar, LLC* v. *U.S. Fish & Wildlife Serv.*,
    616 F.3d 612 (6th Cir. 2010) ..................................................................... 4, 6, 7

*Letvin* v. *Lew*,
    2014 WL 3865007 (E.D. Mich. Aug. 6, 2014) ............................................... 4, 8

*Mich. Flyer LLC* v. *Wayne Cty. Airport Auth.*,
    860 F.3d 425 (6th Cir. 2017) ....................................................................... 4, 13

*Perry* v. *Am. Tobacco Co.*,
    324 F.3d 845 (6th Cir. 2003) ..................................................................... 11, 18

*Raub* v. *Moon Lake Prop. Owners' Ass'n*,
    2018 WL 10127704 (E.D. Mich. Jan. 3, 2018) ............................................. 8, 9

*Stuart* v. *Lowe's Home Centers, LLC*,
    737 F. App'x 278 (6th Cir. 2018) .............................................................. 17, 18

*Total Benefits Planning Agency, Inc.* v. *Anthem Blue*
    *Cross & Blue Shield*,
    552 F.3d 430 (6th Cir. 2008) ............................................................ 13

*United States* v. *Burris*,
    912 F.3d 386 (6th Cir. 2019) (*en banc*) .......................................... 11

*Vemco, Inc.* v. *Camardella*,
    23 F.3d 129 (6th Cir. 1994) ............................................................. 20

*Wallace* v. *Midwest Fin. & Mortg. Servs., Inc.*,
    714 F.3d 414 (6th Cir. 2013) ................................................... *passim*

*Winget* v. *JP Morgan Chase Bank, N.A.*,
    537 F.3d 565 (6th Cir. 2008) ............................................................. 5

*Wood* v. *Gen. Motors Corp.*,
    2015 WL 1396437 (E.D.N.Y. Mar. 25, 2015) ................................ 20

**Rules**

Fed. R. Civ. P. 11 ..................................................................................... 20

Fed. R. Civ. P. 12(b)(6) .................................................................... 14, 17

Fed. R. Civ. P. 15 ................................................................................ 4, 12

Fed. R. Civ. P. 59 ........................................................................... *passim*

## STATEMENT OF ISSUE PRESENTED

Should this Court alter or amend the judgment dismissing GM's Complaint with prejudice to permit GM to file its proposed Amended Complaint, where GM merely (i) repeats the already rejected argument that the Court applied an unduly "strict" standard for pleading causation under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), (ii) misrepresents the standard for leave to amend, and (iii) casts baseless aspersions on FCA that (a) are completely unsupported by any well-pled factual allegations, and (b) do not change the fact that GM's causation theory remains too indirect and contingent upon harm allegedly incurred by others?[1]

---

[1]    Plaintiffs General Motors LLC and General Motors Co. are referred to collectively as "GM"; Defendants FCA US LLC and Fiat Chrysler Automobiles N.V. are referred to collectively as "FCA."

## STATEMENT OF CONTROLLING
## OR MOST APPROPRIATE AUTHORITIES

The controlling or most appropriate authorities for the relief that FCA seeks

include:

1.   Fed. R. Civ. P. 59.

2.   *Energy Conversion Devices Liquidation Tr.* v. *Trina Solar Ltd.*, 833 F.3d 680
     (6th Cir. 2016).

3.   *Leisure Caviar, LLC* v. *U.S. Fish & Wildlife Serv.*, 616 F.3d 612 (6th Cir.
     2010).

4.   *Letvin* v. *Lew*, 2014 WL 3865007 (E.D. Mich. Aug. 6, 2014) (Borman, J.).

5.   *Mich. Flyer LLC* v. *Wayne Cty. Airport Auth.*, 860 F.3d 425 (6th Cir. 2017).

## PRELIMINARY STATEMENT

GM's motion to set aside and vacate the Court's judgment dismissing GM's claims, or to amend that judgment to convert the dismissal of GM's Complaint to be "without prejudice," and thereby permit GM to file its proposed Amended Complaint, is meritless and should be denied. GM must know that the prospect of the Court changing its mind on the crucial issue of RICO causation is slim to none, so this motion is apparently a vehicle for GM to make more defamatory and baseless accusations about a competitor that is winning in the marketplace.

GM's proposed Amended Complaint reads like a script from a third-rate spy movie, full of preposterous allegations that FCA paid not one, but two, "mole[s]" to "infiltrate[] GM" and "funnel[] inside information to [FCA]" using money "stashed" in a "broad network" of "secret overseas [bank] accounts." (Motion 2, 5, 7-8, 20-21.) None of that is true. That GM has extended its attacks to individual FCA officers and employees, making wild allegations against them without a shred of factual support, is despicable. (*E.g.*, proposed Amended Complaint ("AC") ¶¶ 101(c), 101(d), 101(e).)

In addition to concocting an unfounded tale of "corporate espionage" that would make John Le Carré cringe (Motion 21), GM (i) improperly seeks to reargue the standard for "direct causation" under RICO, (ii) misrepresents the legal standard governing leave to amend after judgment has been entered, and (iii) accuses the

Court of committing "manifest error" by dismissing the Complaint without granting GM leave to amend, even though GM spent two years drafting its original complaint and did not previously request leave to amend.  GM is wrong in every respect.

This motion is the latest example of the lengths to which GM is prepared to go in attacking FCA, accusing the Court of misconduct along the way.  GM's fictional account of "corporate espionage" is based entirely on two unremarkable allegations:

1.  FCA—a Dutch corporation headquartered in the United Kingdom, with subsidiaries that operate facilities in Italy and more than 40 other countries, and sales to customers in more than 130 countries—maintains "foreign bank accounts" in "countries such as Switzerland, Luxembourg, Liechtenstein, Italy, Singapore, the Cayman Islands, and others."  (Motion 5.)  That is unremarkable, and certainly not illegal.

2.  Certain individuals—such as Alphons Iacobelli (who GM hired without asking FCA for a reference after his employment was summarily terminated by FCA) and Joseph Ashton (a former UAW official who served on GM's Board of Directors and has no connection to FCA)—also held or controlled bank accounts in some of those same countries.  (AC ¶¶ 35, 43.)  Even if true, there is nothing illegal about that either.

Based solely on the "existence of [these] foreign bank accounts" (Karis Decl. ¶ 10), GM leaps to the bold conclusion, which it pleads solely on "information and belief," that Iacobelli and Ashton were "mole[s]" paid by FCA through "secret overseas [bank] accounts" to "infiltrate[] GM," "funnel[] inside information to [FCA]," and ensure that benefits and concessions provided to FCA by the UAW were not also provided to GM.  (Motion 2, 5, 7-8, 20-21.)  No facts alleged in the

proposed Amended Complaint—not a single one—support this outrageously speculative accusation.

Confirming that GM is engaged in a smear campaign, and that its principal goal is to sully the reputations of FCA and the individual FCA officers and employees it has chosen to attack, GM includes in its proposed Amended Complaint allegations concerning "a variety" of other supposed "scandals in organizations controlled or connected to FCA NV." (AC ¶¶ 185-94.) These allegations have nothing whatsoever to do with the FCA officers and employees whose reputations GM has wrongly impugned. Moreover, the allegations have no connection to GM's claims in this case, and thus they can do nothing to correct GM's failure to meet the proximate cause requirement of RICO.[2]

GM's motion to alter or amend the judgment should be denied for the following reasons:

*First*, the Court should deny GM's motion to alter or amend the judgment because there is no reason for the Court to reconsider its decision that RICO

---

[2]    GM insinuates that, because FCA has been accused of engaging in certain misconduct in the past, the Court should embrace GM's speculative "corporate espionage" theory. But on that "logic," the fact that GM frequently has been accused of making misrepresentations to consumers, *e.g.*, *Carriuolo* v. *Gen. Motors Co.*, 823 F.3d 977, 981 (11th Cir. 2016), including concealing an ignition switch defect linked to more than 120 fatalities (*see* CNN, *Death toll for GM ignition switch: 124* (Dec. 10, 2015), https://tinyurl.com/yxcnyx75), is reason to conclude that GM's proposed Amended Complaint is replete with such misrepresentations.

plaintiffs—especially economic competitors—must satisfy a strict proximate cause requirement.  GM merely "regurgitate[s] the same arguments and case law set forth in [its] previous response to [FCA's] motions to dismiss."  *Letvin* v. *Lew*, 2014 WL 3865007, at *1 (E.D. Mich. Aug. 6, 2014) (Borman, J.).  As GM and its experienced counsel must know, "[a] motion under Rule 59(e) is not an opportunity to re-argue a case."  *Mich. Flyer LLC* v. *Wayne Cty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017).

*Second*, GM misrepresents the standard for leave to amend, contending that "leave to amend should have been freely granted" under the "liberal amendment policy" of Federal Rule of Civil Procedure 15.  (Motion v ("Statement of Issues"), 13.)  But the Sixth Circuit has squarely held that Rule 15 and its liberal amendment policy do not apply when a plaintiff seeks leave to amend *after a judgment has been entered against it*, which is what is happening here.  "A party seeking leave to amend after an adverse judgment faces a heavier burden than for a Rule 15 leave to amend motion prior to a final ruling."  *Mich. Flyer*, 860 F.3d at 431.  This makes eminent sense:  "If a permissive amendment policy applied after adverse judgments, plaintiffs could use the court as a sounding board to discover holes in their arguments, then 'reopen the case by amending their complaint to take account of the court's decision.'"  *Leisure Caviar, LLC* v. *U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010).  Thus, while GM wrongly boasts that its proposed Amended

-4-

Complaint "addresses every concern the Court raised in its Order granting Defendants' motions to dismiss" (Motion 16), GM was "not entitled to an advisory opinion from the Court informing [it] of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *Winget* v. *JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 573 (6th Cir. 2008).

*Third*, GM fails to meet its burden of showing that its so-called "newly discovered evidence" "clearly would have produced a different result if presented before the original judgment." *Davis* v. *Prof'l Reps. Org.*, 666 F. App'x 433, 440 (6th Cir. 2016). The only new purported "facts" that GM alleges are the "existence of foreign bank accounts by various individuals previously and currently employed by FCA and former UAW Presidents." (Karis Decl. ¶ 10.) There is not one well-pled allegation in the proposed Amended Complaint that these foreign bank accounts were used to pay bribes or facilitate any other illegal conduct. Instead, GM merely asserts, on "information and belief," that the existence of foreign accounts must mean that Iacobelli and Ashton were "moles" who infiltrated GM, passed unspecified inside information about GM to FCA, and ensured that the alleged concessions provided to FCA by the UAW were not also provided to GM. (Motion 2, 5, 7-8, 20-21.)

Such baseless speculation—plainly the product of a fevered imagination—is insufficient to state a claim. For one, GM's unsupported allegations pled "upon

-5-

information and belief" "are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship* v. *Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). For another, even if these new allegations were accepted as true, GM's causation theory continues to be too indirect. (*See infra* 18-19.) And lastly, even if it were possible to conclude that the purpose of the alleged RICO scheme was to injure GM and no one else by imposing higher labor costs on GM (Motion 21), then the proposed Amended Complaint would fail to state a claim because "a single scheme targeting a single victim" does not plead "an actionable 'pattern of racketeering activity.'" *Bachi-Reffitt* v. *Reffitt*, 802 F. App'x 913, 918 (6th Cir. 2020).

## ARGUMENT

A plaintiff "who seeks to amend a complaint after losing the case must provide a compelling explanation to the district court for granting the motion," based on "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar*, 616 F.3d at 615, 617. In deciding whether to grant such a motion, a court must also "consider[] the competing interest of protecting the finality of judgments and the expeditious termination of litigation," and "ought to pay particular attention to the

movant's explanation for failing to seek leave to amend prior to the entry of judgment." *Id.* at 615-16 (internal quotation omitted).

While GM seeks to convey the impression that it has a clear right to the relief requested in its motion, nothing could be further from the truth.  This Court has "considerable discretion in deciding whether to grant Rule 59 motions," *Clark* v. *United States*, 764 F.3d 653, 661 (6th Cir. 2014), and in exercising that discretion must "remain conscious that relief under Rule 59(e) is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Hernandez* v. *City of Saginaw*, 2013 WL 4052632, at *2 (E.D. Mich. Aug. 12, 2013).  GM utterly fails to show that it is entitled to such an "extraordinary remedy" here.

## I.  The Court should deny GM's request for reconsideration of this Court's correct application of RICO's direct causation standard.

GM is upset that this Court faithfully applied the strict standard for pleading "direct causation" under RICO, but that certainly is not a valid basis for altering or amending the judgment.  GM's request that the Court reconsider its legal holding, based on the very same arguments that GM made in its failed opposition to FCA's motions to dismiss, should be denied for two independent reasons.

**A.   Rehashing previously rejected arguments is not grounds for altering or amending a judgment.**

GM merely "rehash[es] the same arguments this Court already rejected," which is not grounds for altering or amending the judgment.  *Letvin*, 2014 WL 3865007, at *2.  Indeed, GM's entire argument is copied almost verbatim from its Opposition to FCA's motions to dismiss, including:

- The Sixth Circuit in *Wallace* v. *Midwest Financial & Mortgage Services, Inc.*, 714 F.3d 414 (6th Cir. 2013) held that "foreseeability" and "intentional[]" conduct are the only requirements for causation under RICO.  (*Compare* Motion 4, 10-11 *with* Opp. 11-12, 16.)

- "[N]either *Hemi* nor *Anza*," require a plaintiff to satisfy a "strict" direct causation requirement.  (*Compare* Motion 4, 10-11 *with* Opp. 9, 11.)

- The Supreme Court held in *Bridge* v. *Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) that "[p]roximate cause" under RICO "is a flexible concept." (*Compare* Motion 10 *with* Opp. 8.)

- GM's alleged injuries are "distinct" from those of other more directly injured parties.  (*Compare* Motion 12 *with* Opp. 13, 18, 20.)

- GM's causation theory is "[u]nlike" the one rejected in *Anza* v. *Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), and more akin to the one in *Empress Casino Joliet Corp.* v. *Johnston*, 763 F.3d. 723, 733 (7th Cir. 2014). (*Compare* Motion 4, 12 *with* Opp. 13, 17-18.)

This effort by GM to get another bite at the apple is plainly improper. "Rule 59(e) does not exist to provide an unhappy litigant an opportunity to relitigate issues the court has already considered and rejected." *Jones* v. *Nat. Essentials, Inc.*, 740 F. App'x 489, 495 (6th Cir. 2018); *see Raub* v. *Moon Lake Prop. Owners' Ass'n*,

2018 WL 10127704, at *1 (E.D. Mich. Jan. 3, 2018) ("Plaintiffs may not use rule 59(e) to re-assert arguments previously rejected by the Court.").

### B. This Court correctly applied the standard for pleading causation under RICO.

GM's motion for reconsideration should be denied because there is no mistake to be remedied:  in dismissing GM's Complaint, the Court correctly applied the standard for pleading causation under RICO.

GM first faults the Court for describing proximate cause under RICO as a "strict standard."  (Motion 2, 4.)  But that statement is unquestionably correct.  "The requirements of RICO causation *are stricter* than those for common-law torts." *Empire Merchs., LLC* v. *Reliable Churchill LLLP*, 902 F.3d 132, 145 (2d Cir. 2018) (emphasis added; quotation omitted).  Moreover, the Supreme Court has directed district courts to be skeptical of RICO "claims brought by economic competitors, which, if left unchecked, could blur the line between RICO and the antitrust laws." *Anza*, 547 U.S. at 460; *see Empire Merchs.*, 902 F.3d at 144 (same).  Such skepticism demands strict enforcement of the requirements of RICO, including proximate cause.

Next, and in a similar vein, GM accuses the Court of inventing an "unduly strict proximate cause standard that is inconsistent with governing Supreme Court and Sixth Circuit precedent." (Motion 4, 10.)  In particular, GM argues that the Sixth Circuit in *Wallace* "rejected the notion" of a "directness" requirement (Motion 10),

and held instead that "a scheme that intentionally and purposefully targets another for harm causes injury that is both foreseeable and sufficient to show proximate cause." (Motion 10-11.)  These arguments are nothing new, and GM is wrong on both scores, as this Court already has found.  *See Gen. Motors LLC* v. *FCA US LLC*, 2020 WL 3833058, at *8 (E.D. Mich. July 8, 2020).

*First*, the Sixth Circuit in *Wallace* did not "reject[]" the Supreme Court's "directness" requirement, nor could it do so.  (Motion 10.)  As an initial matter, *Wallace* did not address the precise causation issue here, which was also the focus in *Hemi Grp., LLC* v. *City of N.Y.*, 559 U.S. 1 (2010), and *Anza*—namely, whether someone other than the RICO plaintiff was more directly injured by the defendant's alleged conduct.  Instead, the question in *Wallace* was whether a fraudulently "inflated appraisal" of plaintiff's home procured by defendants "'led directly' to [plaintiff's] decision" to enter into a "high-cost, adjustable-rate mortgage," which was the cause of plaintiff's financial ruin and bankruptcy.  714 F.3d at 416, 420.  For this reason, the *Wallace* panel had no need to engage with the Supreme Court's precedents relating to plaintiffs that suffered only indirect injury.  In any event, the Supreme Court could not have been clearer in *Hemi* that, "in the RICO context, the focus is on the directness of the relationship between the conduct and the harm," and that persons who claim to have incurred harm "beyond the first step" in the causal chain cannot assert a RICO claim.  *Hemi*, 559 U.S. at 10, 12.  Even though *Wallace*

-10-

"post-date[s]" *Hemi* (Motion 4), the Sixth Circuit does not have the power to overrule the Supreme Court.

*Second*, and for similar reasons, *Wallace* did not hold that "a scheme that intentionally and purposefully targets another for harm causes injury that is both foreseeable and sufficient to show proximate cause." (Motion 10-11.) The Supreme Court expressly rejected the argument that "RICO's proximate cause requirement turn[s] on foreseeability," as argued by the *Hemi* dissenters. *Hemi*, 559 U.S. at 12.

Likewise, long before *Wallace*, the Sixth Circuit "rejected the argument that the intentional nature of plaintiffs' claims alters the remoteness inquiry," holding that "specific intent to harm does not magically create standing or cause . . . injuries to be direct." *Perry* v. *Am. Tobacco Co.*, 324 F.3d 845, 850 (6th Cir. 2003). The Sixth Circuit held again seven years later that an allegation that "Defendants intentionally caused the alleged course of events . . . is not relevant to our directness requirement analysis" under RICO. *City of Cleveland* v. *Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496, 502-03 (6th Cir. 2010). Thus, even if *Wallace* purported to alter the Sixth Circuit's standard for pleading direct causation under RICO *sub silentio* (it did not), the *Wallace* panel had no power to do so, because "[a] panel of [the Sixth Circuit] cannot overrule the decision of another panel." *United States* v. *Burris*, 912 F.3d 386, 406 (6th Cir. 2019) (*en banc*).

In sum, there is no merit to GM's claim that it has met RICO's proximate cause requirement by alleging that FCA intended to cause indirect harm to GM.  As explained further below in Section III, because GM's supposedly "new" evidence purports to show only that FCA's conduct was "intentionally designed to . . . harm GM," that evidence is irrelevant to the proximate cause analysis and does not make GM's alleged injury any less indirect.  (Motion 5.)

## II. GM was not entitled to an advisory opinion from this Court as to how to overcome the numerous deficiencies in its Complaint.

GM asserts that this Court committed "manifest error" by failing to anticipate that GM might want "an opportunity to rectify the[] perceived deficiency in its pleadings," and that the Court should now grant GM leave to amend pursuant to "Rule 15(a)'s liberal [amendment] policy."  (Opp. 2, 4-5, 15.)  Both assertions are wrong.  GM—which is not some *pro se* litigant, but a major corporation represented by experienced counsel—was "not entitled to a directive from the district court 'informing [it] of the deficiencies of the complaint and then an opportunity to cure those deficiencies.'"  *Graham* v. *Fearon*, 721 F. App'x 429, 439 (6th Cir. 2018).

As an initial matter, this Court did not "commit[] manifest error by dismissing GM's claims *with prejudice* and denying GM the opportunity to file an amended complaint to address the Court's concerns."  (Motion 2 (emphasis in original).)  GM omits the crucial point that it never asked the Court for leave to amend—not when it opposed FCA's motions to dismiss and not at oral argument.  Where, as here, a

"Plaintiff never filed a proper motion to amend [its] complaint" before judgment is entered against it, a "district court d[oes] not abuse its discretion . . . by failing to rule on a motion that was never before it." *Bunn* v. *Navistar, Inc.*, 797 F. App'x 247, 257 (6th Cir. 2020). Consequently, GM's "argument that the district court should have rescued Plaintiffs by *sua sponte* offering leave to amend the complaint is simply misplaced." *Total Benefits Planning Agency, Inc.* v. *Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 438 (6th Cir. 2008).

More fundamentally, contrary to GM's assertion, leave to amend should not be "freely" granted after a judgment has been entered against a plaintiff. (Motion 13.) The Sixth Circuit "has been abundantly clear that, once judgment issues, concerns about finality dilute the otherwise permissive amendment policy of the Civil Rules." *Energy Conversion Devices Liquidation Tr.* v. *Trina Solar Ltd.*, 833 F.3d 680, 692 (6th Cir. 2016). GM never even mentions the Sixth Circuit's "heav[y] burden" standard that applies in the post-judgment context. *Mich. Flyer*, 860 F.3d at 431.

Nor are the facts here anything like those in *Bledsoe* v. *Community Health Systems, Inc.*, 342 F.3d 634 (6th Cir. 2003) (Motion 14), which "concerned a situation where the plaintiff included all of the relevant elements in his complaint but lacked notice of a heightened pleading standard until the moment the district court dismissed the complaint." *Energy Conversion*, 833 F.3d at 692 (discussing

*Bledsoe*).  Here by contrast, RICO's direct causation standard was not "unclear or debatable." (Motion 14.) *Anza* was decided in 2006 and *Hemi* has been on the books for a decade.  Moreover, as in *Energy Conversion*, "[e]ven after [FCA] moved to dismiss the complaint largely based on [GM's] failure to plead [direct causation as required by *Hemi* and *Anza*], [GM] did not amend the complaint," but instead sought leave to amend "[o]nly after the district court rejected [GM's] argument and dismissed the case under Rule 12(b)(6)."  833 F.3d at 691.  Thus, the unique facts at issue in *Bledsoe* are "not remotely this case."  *Id.* at 692.

## III.   GM's alleged "new evidence" is wild conjecture and does nothing to cure the deficiencies the Court identified in dismissing the Complaint.

GM asserts that it "should plainly be given leave to file its proposed [Amended Complaint] in light of GM's newly discovered and alleged evidence confirming GM's status as an intended and direct victim of Defendants' unlawful scheme." (Motion 15-16.)  Not only is GM's "newly discovered evidence" the kind of baseless speculation that courts should, and routinely do, ignore, but GM fails to demonstrate that such evidence "clearly would have produced a different result if presented before the original judgment."  *Davis*, 666 F. App'x at 440.

### A.    GM's "new evidence" is nothing but conclusory speculation.

As explained above at pp. 1-3, GM's allegations of "corporate espionage" are not supported by a single well-pled factual allegation, let alone pled "with sufficient particularity under Rule 9(b)" as required when alleging predicate acts of "money

laundering." *Arnold* v. *Alphatec Spine, Inc.*, 2014 WL 2896838, at *13 (S.D. Ohio June 26, 2014). GM merely contends that it retained unspecified "third parties" with unspecified "credentials" who discovered unspecified "reliable information" about the existence of foreign bank accounts. (Karis Decl. ¶ 8.) But GM does not deign to identify these third parties, state their credentials, or provide any basis to assess whether the unspecified "information" they allegedly learned is in fact "reliable." For all anyone knows, "[p]erhaps these [unidentified] sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist." *Higginbotham* v. *Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007) (Easterbrook, J.).

Nor does anything in GM's proposed Amended Complaint support GM's zany allegations that "Ashton and Iacobelli infiltrated GM" to (i) "gather and funnel highly confidential information to the FCA Defendants and their co-conspirators at the UAW" (Motion 20), or (ii) "ensure that Ashton imposed higher costs on GM, rather than the same benefits it provided to FCA." (AC ¶ 88.)[3] Instead, this purported grand conspiracy rests solely on the unremarkable alleged fact that FCA—

---

[3] Notably, when GM appointed Ashton to its Board of Directors in 2014, it had nothing but praise for him, stating in a press release that "Joe brings a wealth of knowledge from his work across many industries, especially his deep understanding of how labor strategy can contribute to a company's success." (GM Press Release, *GM Nominates UAW VP Joe Ashton to Board of Directors* (Apr. 25, 2014), https://tinyurl.com/y2l2aazh.) Moreover, Ashton retired from the UAW when he joined the GM Board (*id.*), and GM provides no explanation of how Ashton could influence—much less control—the UAW's bargaining positions when he no longer was an officer of the union.

which operates through subsidiaries in more than 130 countries around the world—
had foreign bank accounts in some of the same countries as Iacobelli and Ashton.
(*See supra* at 2.)  Even if true, that coincidence is insufficient to state a claim.

Indeed, GM's theory is remarkably similar to allegations the Sixth Circuit
squarely rejected in *16630 Southfield*.  There, plaintiff sued a bank contending that
denial of his application to refinance a loan was discriminatory based on his Iraqi
origin.  But the Complaint "allege[d] facts that are merely consistent with liability
(*i.e.*, being Iraqi and being denied a loan extension) as opposed to facts that
demonstrate discriminatory intent."  727 F.3d at 505.  The inference that GM asks
the Court to draw—namely, that the existence of foreign bank accounts means those
accounts must have been used to facilitate "corporate espionage"—is even less
plausible.  Although GM has been forced to retrench from loss-making businesses
in various jurisdictions, it is a virtual certainty that GM still has foreign bank
accounts, but that hardly is a basis to accuse GM of engaging in money laundering.[4]

The plaintiff in *16630 Southfield* attempted to bolster his claim with
speculation, "alleging 'upon information and belief' that [the bank] has refinanced
delinquent borrowers who 'were Caucasian' or 'not . . . members of minority

---

[4]    According to GM's public filings with the U.S. Securities & Exchange
Commission, as of December 31, 2019, GM operates through subsidiaries in 35
countries. (*See* GM Form 10-K, Exhibit 21, https://tinyurl.com/y477tv4u).  And GM
has subsidiaries (and presumably bank accounts) in many of the countries it contends
are hotbeds for money laundering, including Switzerland, Italy, and Singapore.  (*Id.*)

groups.'"  *Id.* at 506.  GM similarly speculates "on information and belief" that FCA used foreign bank accounts to "secretly" provide money to Iacobelli, Ashton, and others "in exchange for intentionally infiltrating GM, both to impose asymmetrical costs on GM through the 2015 collective bargaining agreement and to pressure GM to merge with FCA NV."  (Motion 6-8.)  But "[t]hese 'naked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint," and thus must be "ignore[d] when evaluating a complaint's sufficiency."  *16630 Southfield*, 727 F.3d at 506.  Even if one accepted GM's strained theory that the existence of foreign bank accounts alone supports a conclusion that those accounts were used to facilitate bribes or engage in money laundering, the proposed Amended Complaint contains zero factual allegations as to what information Ashton and Iacobelli supposedly passed on to FCA, who at FCA received that information, or how the information supposedly "directly harmed GM" in negotiation of the 2015 collective bargaining agreement.  (Motion 21.)  Indeed, it is impossible that Iacobelli sabotaged negotiation of that agreement from within GM because, as GM itself confirms, it did not "hire[] Iacobelli to work in its labor relations department" until "*January 2016*."  (AC ¶ 182 (emphasis added).)

All GM has is the *ex cathedra* pronouncement that foreign bank accounts must have existed for the sole purpose of enabling FCA to orchestrate a nefarious plot to injure GM.  Again, "conclusory allegations, unsupported by facts, are not sufficient

to survive a 12(b)(6) motion." *Stuart* v. *Lowe's Home Centers, LLC*, 737 F. App'x 278, 282 (6th Cir. 2018).  This is particularly true in the RICO context, where courts should "not allow RICO plaintiffs leeway to continue on with their case in an attempt to prove an entirely remote causal link." *Empire Merchs.*, 902 F.3d at 144.

## B. GM's "new evidence," even if considered, would not "clearly" lead to a "different result."

GM's proposed Amended Complaint still fails to state a valid RICO claim for numerous independent reasons—even if GM's speculative and conclusory new allegations could be considered.  As a result, GM's "newly discovered evidence" would not lead to a "different result." *Davis*, 666 F. App'x at 440.

*First*, GM contends that "the newly discovered evidence confirms that GM was the target of Defendants' scheme." (Motion 20.)  But as explained above, "specific intent to harm does not magically create standing or cause . . . injuries to be direct." *Perry*, 324 F.3d at 850.  It is similarly irrelevant that GM says its "newly discovered evidence" shows that its alleged "injuries were distinct" from those incurred by rank-and-file FCA employees or the IRS.  (Motion 12, 20.)  The notion that a plaintiff suffered a "unique" or "distinct" injury has no bearing on whether the alleged injury "was directly caused by the defendants' racketeering." *Empire Merchs.*, 902 F.3d at 145-46.

*Second*, GM's causation theories remain incompatible with the three *Holmes* factors,[5] including because plaintiffs alleging more direct injury than GM have already sued (including rank-and-file members of the UAW and the U.S. Department of Justice on behalf of the IRS), and GM's claim that its labor costs were increased by virtue of the conduct alleged in the proposed Amended Complaint will lead to precisely the kind of "intricate, uncertain inquiries" that should not be permitted to "overrun[]" the litigation.  *Anza*, 547 U.S. at 460.

*Third*, according to GM's new theory, FCA's alleged conduct "harmed GM— not FCA's workers or anyone else—through FCA's orchestration of the scheme from within through a [GM] Board member and high-ranking labor relations executive."  (Motion 21; *see* AC ¶ 4 (alleging that "only GM incurred" harm from FCA's alleged conduct).)  GM has missed the boomerang effect of that contention. If the singular purpose of FCA's alleged actions was to harm GM and no one else, as GM now contends, then the proposed Amended Complaint would need to be dismissed because "a single scheme targeting a single victim" does not plead "an actionable 'pattern of racketeering activity.'"  *Bachi-Reffitt*, 802 F. App'x at 918;

---

[5]     These factors include (i) whether there are more immediate victims with incentive to sue, (ii) whether it is difficult to quantify the amount of the plaintiff's alleged damages, and (iii) whether there is a potential risk of multiple recoveries. *Holmes* v. *Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 269 (1992); *see GM*, 2020 WL 3833058, at *8 (discussing *Holmes* factors).

*see Vemco, Inc.* v. *Camardella*, 23 F.3d 129, 135 (6th Cir. 1994) (no RICO liability where there was a "single victim and a single scheme for a single purpose").

*     *     *

As is evident from even a casual review, GM's motion is not a serious legal document filed in good faith. The evident purpose of GM's motion is to tarnish the reputations of FCA and certain of its officers and employees—an inexcusable litigation tactic.

It is well-known that RICO claims have "damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." *Wood* v. *Gen. Motors Corp.*, 2015 WL 1396437, at *4 (E.D.N.Y. Mar. 25, 2015). For this reason, the Sixth Circuit recently instructed district courts "[t]o deter" the "strong temptation for plaintiffs to raise a RICO claim, even when the claim is obviously frivolous," by not "hesitat[ing] to impose Rule 11 sanctions as a sanction for bringing frivolous RICO claims." *Bachi-Reffitt*, 802 F. App'x at 919.

## CONCLUSION

For the foregoing reasons, the Court should deny GM's motion to alter or amend the judgment.

August 10, 2020                                    Respectfully submitted,

                                                   */s/ Steven L. Holley*

Thomas W. Cranmer (P25252)          Steven L. Holley (N.Y. 1917830)
Matthew P. Allen (P57914)           Matthew J. Porpora (N.Y. 4402798)
MILLER, CANFIELD, PADDOCK            Jacob E. Cohen (N.Y. 4787271)
   & STONE, PLC                      SULLIVAN & CROMWELL LLP

*Counsel for FCA US LLC and Fiat Chrysler Automobiles N.V.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:  None.

Respectfully submitted,

*/s/ Steven L. Holley*
Steven L. Holley (N.Y. 1917830)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Tel:  (212) 558-4000
*holleys@sullcrom.com*

*Counsel for FCA US LLC*
*and Fiat Chrysler Automobiles N.V.*

August 10, 2020