UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENERAL MOTORS LLC,
GENERAL MOTORS COMPANY,

              Plaintiffs,

v.

FCA US LLC, FIAT CHRYSLER
AUTOMOBILES N.V., ALPHONS
IACOBELLI, JEROME DURDEN,
MICHAEL BROWN,

              Defendants.
_____/

Case No. 19-cv-13429

Paul D. Borman
United States District Judge

David R. Grand
United States Magistrate Judge

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT (ECF NO. 84)

### I. INTRODUCTION

On July 8, 2020, this Court dismissed General Motors LLC's and General Motors Company's, (together "GM") Complaint against FCA US LLC ("FCA US"), Fiat Chrysler Automobiles N.V. ("FCA NV"), Alphons Iacobelli, Jerome Durden, and Michael Brown. (ECF No. 82.) The Court found that GM failed to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, because GM's injuries, as alleged in its Complaint, were not proximately caused by Defendants' alleged violations of the RICO Act. (*Id.*) Accordingly, the Court granted Defendants' Motions to Dismiss and dismissed GM's Complaint with prejudice. (*Id.*)

On August 3, 2020, GM filed its Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e). (ECF No. 84.) In it, GM argues that the Court committed two clear errors of law—applying a strict proximate cause requirement and dismissing the Complaint with prejudice—and says that newly available evidence addresses the concerns raised by the Court and therefore requires the Court to amend the judgment, reopen the case, and allow GM to file an amended complaint. (*Id.* at PgID 2982.) The newly discovered evidence upon which GM relies is alleged "reliable information indicating the existence of foreign [bank] accounts potentially connected to the scheme alleged in GM's Complaint." (ECF No. 84-3, Karis Dec., PgID 3141.)

The Court requested a response to GM's Motion from Defendants. (ECF No. 85.) Iacobelli filed his Response on August 8, (ECF No. 87), and Durden joined in Iacobelli's Response (ECF No. 88). FCA US and FCA NV filed their Response on August 10 (ECF No. 90), and Durden also joined in FCA's Response (ECF No. 91).

The Court disagrees with GM. Neither the application of the strict proximate cause standard nor the decision to dismiss with prejudice, rather than without prejudice, was a clear legal error, and GM's newly discovered evidence is too speculative to warrant reopening this case. Therefore, the Court denies GM's Motion to Alter or Amend Judgment. (ECF No. 84.)

## II. STANDARD OF REVIEW

"A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). "The purpose of Rule 59(e) is 'to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings.'" *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (citation omitted). The Sixth Circuit has "repeatedly" held that "Rule 59(e) motions cannot be used to present new arguments that could have been raised prior to judgment" and that while Rule 59(e) allows "for reconsideration; it does not permit parties to effectively 're-argue a case.'" *Id.* (citation omitted); *see also Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("A motion under Rule 59(e) is not an opportunity to re-argue a case.")

This standard of review applies with equal force "when a party seeks to amend a complaint after an adverse judgment," even though requests to amend a complaint under Rule 15 are, in the usual case, freely granted. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010). As the Sixth Circuit noted in *Leisure Caviar*, Rule 15 requests after an adverse judgment are different:

> [T]his is not a traditional motion to amend the complaint. Rule 15 requests to amend the complaint are frequently filed and, generally speaking, "freely" allowed. But when a Rule 15 motion comes *after* a judgment against the plaintiff, that is a different story. Courts in that setting must "consider[ ] the competing interest of protecting the finality of judgments and the expeditious termination of litigation." *Morse* [*v. McWhorter*], 290 F.3d [795,] 800 [(6th Cir. 2002)]. If a permissive amendment policy applied after adverse judgments, plaintiffs could use the court as a sounding board to discover holes in their arguments, then "reopen the case by amending their complaint to take account of the court's decision." *James v. Watt*, 716 F.2d 71, 78 (1st Cir.1983) (Breyer, J.). That would sidestep the narrow grounds for obtaining post-judgment relief under Rules 59 and 60, make the finality of judgments an interim concept and risk turning Rules 59 and 60 into nullities. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1489 (3d ed. 2010).

*Id.* at 615–16 (emphasis in original). District Courts have "considerable discretion in deciding whether to grant" a Rule 59(e) motion in which a party seeks to reopen the case and file an amended complaint. *Id.* at 615.

### III.   ANALYSIS

GM advances three grounds upon which to grant its Motion to Alter or Amend. First, GM argues that the Court committed a clear error of law when it required a direct relationship between the alleged RICO violation and the alleged harm to satisfy the proximate cause requirement. (ECF No. 84, Motion, PgID 2991–94.) This argument is a complete repeat of GM's opposition to Defendants' Motions to Dismiss and is therefore a prohibited attempt to have a second bite at the apple. *See Michigan Dep't of Envtl. Quality v. City of Flint*, 296 F. Supp. 3d 842, 847 (E.D.

Mich. 2017) (identifying "common denominator" among rules for post-judgment relief as "a party that has had a fair chance to present its arguments ought not have a second bite at the apple").

In its Motion, GM cites, among other cases, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008) and *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414, 419 (6th Cir. 2013), to argue that proximate cause is a flexible concept that cannot be applied according to any strict, black-letter rule. (ECF No. 84, Motion, PgID 2991.) These are the same cases that GM cited to make the same argument in Response to FCA's Motion to Dismiss, (*see* ECF No. 64, Response to FCA US, PgID 2326, 2329–36), and are the same cases that the Court read, considered, and distinguished in ruling on the Motions to Dismiss. (*See, e.g.*, ECF No. 82, O&O, PgID 2964–66 (distinguishing *Wallace*).) There is no need for the Court to reconsider this argument and re-explain its clear conclusion that controlling Supreme Court precedent requires a direct causal relationship between the alleged RICO violation and the alleged harm because "[a] motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe*, 146 F.3d at 374. Thus, GM's first argument in support of its Motion to Alter or Amend fails.

GM's second argument is that the Court committed a clear legal error when it dismissed the Complaint with prejudice, instead of *sua sponte* granting GM leave to amend. (ECF No. 84, Motion, PgID 2994–96.) In general, an order of dismissal for

5

failure to state a claim upon which relief can be granted is an adjudication on the merits, which means that the dismissal has prejudicial effect. *See* Fed. R. Civ. P. 41(b) ("[A]ny dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."); *Bartsch v. Chamberlin Co. of Am.*, 266 F.2d 357, 358 (6th Cir. 1959) (confirming that dismissal for reasons other than lack of jurisdiction or improper venue was an adjudication on the merits unless otherwise stated). Thus, in the Sixth Circuit, the "default rule is that 'if a party does not file a motion to amend or a proposed amended complaint' in the district court, 'it is not an abuse of discretion for the district court to dismiss the claims with prejudice.'" *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 844 (6th Cir. 2012) (quoting *CNH Am. LLC v. UAW*, 645 F.3d 785, 795 (6th Cir. 2011)). In this case, the plaintiffs did not file a motion to amend or propose an amended complaint prior to the court entering judgment.

It may be an abuse of discretion for a district court to dismiss claims with prejudice when "a more carefully drafted complaint might state a claim" and the drafter of the complaint lacked notice that its complaint was deficient until it was too late to cure the deficiencies. *See U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003) (inquiring whether plaintiff had notice and opportunity to cure deficiencies in the complaint before it was dismissed with

6

prejudice). In that case, the court found that the party lacked notice that its complaint was deficient because the law was unsettled on whether Rule 9(b)'s heightened pleading standard applied to the party's claims and the court found, for the first time, that it did. *Id.* at 644–45. That is not the case here. If a party has simply failed to satisfy established pleading standards, the district court is well within its discretion to dismiss the complaint with prejudice. *See Ohio Police*, 700 F.3d at 844 ("The Funds' claims fail as a matter of law under established pleading standards. Accordingly, the district court did not abuse its discretion in dismissing the complaint with prejudice.")

Here, GM argues that the Court abused its discretion in dismissing its claims with prejudice when it applied a strict proximate cause standard that is in "serious tension" with "the foreseeability and logical relationship standard set forth in *Wallace* and other Sixth Circuit cases." (ECF No. 84, Motion, PgID 2996.) According to GM, the "serious tension" between *Wallace* and the Supreme Court cases that establish a direct-injury requirement for RICO claims means that, like the plaintiff in *Bledsoe*, GM was not "definitively on notice" that it had to satisfy a heightened pleading standard, so the claims should have been dismissed without prejudice. *Bledsoe*, 342 F.3d at 645. That is not this case. GM, at the latest, was on clear notice by the June 23, 2020 hearing that the Court would adhere to the

7

controlling Supreme Court precedent in *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010), that the direct proximate cause requirement would apply.

Further, the law on what is required to establish proximate cause in the RICO context is not unsettled. The Supreme Court first required a "direct relation between the injury asserted and the injurious conduct alleged" in 1992. *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). It applied this narrow standard in several subsequent cases, most recently in 2010, in *Hemi Group*, where it explicitly rejected the notion that a foreseeable, but indirect, injury could satisfy the proximate cause standard. In the *Bridge* case upon which GM relies, the Supreme Court did call proximate cause "a flexible concept that does not lend itself to 'a black-letter rule that will dictate the result in every case,'" but it also referred to proximate cause as "[t]he direct-relation requirement," and only found that proximate cause existed because the alleged injury was "the direct result of petitioners' fraud." 553 U.S. at 654, 658. Finally, even the *Wallace* court analyzed proximate cause using "the directness standard." 714 F.3d at 420.

Thus, GM, a sophisticated corporation represented by experienced counsel, was certainly on notice that it had to satisfy a direct-injury requirement to state a claim under the RICO Act. The Court did not abuse its discretion in dismissing GM's Complaint with prejudice when GM had never attempted to amend the complaint prior to judgment. *Cf. Ohio Police*, 700 F.3d at 845 ("[T]here are no extenuating

circumstances justifying a departure from the principle that 'it is not the district court's role to initiate amendments.'") (citation omitted). The Court did not commit a clear error of law, so GM's second argument to amend the judgment fails.

GM's third argument is that newly discovered evidence requires the Court to set aside the judgment and allow GM to file its amended Complaint because the new evidence is of a nature that would probably produce a different result. (ECF No. 84, Motion, PgID 2996–03.) The new evidence upon which GM relies are affidavits from its attorneys, in which the attorneys say that unidentified third-party investigators "recently discovered reliable information indicating the existence of foreign accounts potentially connected to the scheme." (ECF No. 84-3, Karis Dec., PgID 3141, *accord.* ECF No. 84-4, Willian Dec., PgID 3147.) The foreign accounts are "potentially connected to the scheme" because the accounts are owned or controlled by "various individuals previously and currently employed by FCA and former UAW Presidents and officers." (ECF No. 84-3, Karis Dec., PgID 3141–42.) These attorneys also indicate that they were unable to discover this evidence earlier, despite reasonable diligence, because the Court did not permit formal discovery to proceed during the pendency of Defendants' Motions to Dismiss. (ECF No. 84-3, Karis Dec., PgID 3142, *accord.* ECF No. 84-4, Willian Dec., PgID 3148.)

The standard for granting a motion under Rule 59(e) on the basis of newly discovered evidence is "essentially the same" as the standard for granting a motion

9

under Rule 60(b). *Michigan Dep't of Envtl. Quality*, 296 F. Supp. 3d at 846. In order to qualify as "newly discovered," the evidence must have been previously unavailable. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). To justify setting aside a judgment, the new evidence "must be of such a nature as would probably produce a different result." *Michigan Dep't of Envtl. Quality*, 296 F. Supp. 3d at 846; *see also HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) ("To prevail [on a Rule 60(b)(2) motion], a 'movant must demonstrate (1) that it exercised due diligence in obtaining the information and (2) that] the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment.'").

GM's newly discovered evidence is insufficient to warrant altering the judgment. In *Leisure Caviar*, the Sixth Circuit held that "[a] district court does not abuse its discretion by rejecting an unsupported theory for amending a complaint" and affirmed the district court's refusal to amend its judgment when the plaintiffs "offered no deposition testimony, no affidavit, no identifying details—no evidence at all—to corroborate" their new claim. 616 F.3d at 616–17. The affidavits offered by GM in support of their theory—that Defendants used "a broad network of foreign bank accounts containing millions of dollars" to facilitate a bribery scheme that included two "paid mole[s]" inside GM—do very little to corroborate this theory. (ECF No. 84, Motion, PgID 2986–88.) At best, they establish that certain high-

10

qualified, albeit unidentified, investigators have found reliable information that certain current and former FCA employees and UAW officials control foreign bank accounts. (ECF No. 84-3, Karis Dec., 3142, *accord.* ECF No. 84-4, Willian Dec., PgID 3147.) Yet, even that conclusion is unsupported by "identifying details" in the affidavits. *Cf. Leisure Caviar*, 616 F.3d at 617.

     Even if the affidavits establish that these foreign bank accounts exist, that fact does not rise to the inference advanced by GM, that FCA was more-than-likely using the bank accounts to bribe UAW officials. GM argues, for instance, that because former UAW Vice President Joseph Ashton maintained a bank account in the Cayman Islands "at the same time that Defendants were making unlawful payments to try to grease the skids with the UAW," he "operated as a paid mole inside GM's Boardroom during 2015 collective bargaining negotiations." (ECF No. 84, Motion, PgID 2987–88.) GM also argues that the existence of foreign accounts in the names of former UAW President Dennis Williams and former FCA Vice President Alphons Iacobelli mean that FCA "likely provided funds" to these men "in furtherance of Defendants' RICO activities." (*Id.* at PgID 2988–89.) GM attempts to bolster these claims by informing the Court that, in the early 1990's, FCA's predecessor corporation, Fiat S.p.A., used foreign bank accounts to "illicitly pay politicians to obtain commercial contracts." (ECF No. 84-3, Karis Dec., PgID 3140–41, *accord.* ECF No. 84-4, Willian Dec., PgID 3146–47); Alan Cowell, *Kickback Scandal*

11

*Convulses Italy*, N.Y. Times (May 10, 1992), https://www.nytimes.com/1992/05/10/world/kickback-scandal-convulses-italy.html. The existence of foreign bank accounts, and an almost-thirty-year-old scandal do not, however, move GM's claims over the line from speculative or conceivable to plausible. As the Sixth Circuit wrote in *Ohio Police*:

> We must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff. Despite this liberal pleading standard, we may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action. Rather, the complaint has to plead factual content that allows the court to draw the reasonable inference that the defendants are liable for the misconduct alleged. If the [plaintiffs] do not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed.

*Ohio Police*, 700 F.3d at 845 (internal quotations and citations omitted).

GM's newly discovered evidence does not create a reasonable inference that FCA was bribing individuals to infiltrate GM as part of a scheme to directly harm GM, and, therefore, does not change the Court's conclusion that GM's alleged injuries were not proximately caused by FCA's alleged RICO violations. (*See* ECF No. 82, O&O, PgID 2971–74.) GM's newly discovered evidence is not of such a nature as would probably produce a different result. It does not support amending or altering the judgment issued in this case.

## IV. CONCLUSION

For the reasons described above, the Court DENIES Plaintiffs' Motion to Alter or Amend Judgment. (ECF No. 84.)

IT IS SO ORDERED.

Dated: August 14, 2020          s/Paul D. Borman
                                Paul D. Borman
                                United States District Judge